HENRY A. BREED and WILLIAM E. DENNIS, Appel-
lants, *v.* JAMES CUNNINGHAM and GEORGE A. POT-
TER, Respondents.

Where the City of San Francisco, so far as she had any rights in the premises, had
by her own voluntary acts parted with them, any attempt on her part to re-
sume them, by depriving the public of the easement, or denying to purchasers
of lots the right of way, except on payment of wharfage, &c., was clearly
illegal.

The act of March 26th, 1851, operated as a grant, by which property holders
along the line of Market street, and the public, are entitled to the free enjoy-
ment of the same; and this right or privilege could not be resumed by the
State, and was not resumed by the act of April 28th, 1851, confirming the
contract between the appellant and the Sinking Fund Commissioners.

Where lots are sold as fronting on, or bounded by, a certain space, designated in
the conveyance as a street, the use of such space as a street, passes, as appur-
tenant to the grant, and vests in the grantee in common with the public the
right of way over said street.

Such acts on the part of the grantor constitute a dedication of such street, and
he cannot so sell or dispose of it as to alter or defeat such dedication.

THIS was an appeal from the Fourth Judicial District.

The complaint sets forth, that the plaintiffs are the lessees of
the wharves known as California and Market Street wharves, in
the city of San Francisco, and have exclusive right to collect
wharfage, &c., upon all goods, &c., landed thereon, &c.; and had
erected a wharf thereon, &c.; and that there are as appurtenant
to the wharves, two slips, one on each side thereof, of dimensions
described, &c. And charges that the defendants wrongfully,
&c., did commence, &c., and did convey dirt and sand on the
north side of Market street wharf, with the said space or slip,
where the tide ebbs and flows, to fill up said slip, &c., to the
injury, &c., of the plaintiff. And prays an injunction to restrain
the defendants from filling up the same, &c., and for damages,
&c. To this complaint defendants demurred; and plaintiffs filed
an amended complaint the 17th April, 1852, in which they set
forth their title to the leasehold estate in the said Market street
wharf and slip, and the sources from which their title was de-
rived, which concluded by praying for an injunction as in the

original bill.    On the 29th June, the defendants answered severally, denying the material averments contained in the complaint, not setting up any right in themselves—but averring that the Market street wharf was a public street, which had been dedicated as such by the legislature of the State.

The evidence offered by the plaintiff was a lease from the commissioners of the Sinking Fund of the City of San Francisco, for the term of eight years of the premises in question, dated 28th March, 1851.    The ordinance, No. 49, of the Common Council, creating a city stock, approved 23d August, 1850.    The ordinance of October 1st, 1849, annulling the foregoing.    The ordinance, No. 112, authorizing the president of the board of aldermen to sign the deed of trust for the conveyance of the city property to the commissioners of the sinking fund.    The deed of trust from the city to the commissioners of the sinking fund.    The contract (the lease in question) from the commissioners aforesaid, to the plaintiffs, as laid in the complaint.    The joint resolution of the City Councils confirming the contract, passed 2d May, 1851. The act of the legislature confirming the same; approved 28th April, 1851.    The ordinance against obstructing streets, &c., passed May 15th, 1850; and the act of Congress admitting California into the Union, of 30th September, 1850.    Plaintiffs called witnesses to prove that they had built a wharf at Market street, and had been in possession from the date of their lease; and that in April, 1852, defendant, Potter, had filled in the said slip on Market street with dirt and sand, and raised it up above the level of the water, which destroyed the wharf for the distance so filled in—and also to prove the damage, &c., sustained by them thereby.

The defendant produced the admissions of the plaintiff in the trial below; that previous to the 1st of March, 1851, the City of San Francisco had sold and conveyed to divers citizens, lots of land bounded on the space called Market street, below high water mark, and between high water mark and the outward bounds of Beach street and water lots; that such sales were made of said lots by their numbers, in reference to the map or plan of the city, mentioned in the act of the legislature of March 26th, 1851, entitled "An Act to provide for the disposition of certain property of the City of San Francisco.    That the Ayentimento

or town council of San Francisco, had, before the incorporation of the city, sold and conveyed to divers citizens, a large number of lots bounded on the space called Market street, between high water mark and the outer bounds of Beach street and water lots, and that such sales were made by their numbers on said map, and with reference thereto, and that some of the lots so sold were the outermost of the Beach and water lots, which sales were made by deed with a map annexed, a copy of the map referred to. And defendants produced the conveyance and map above referred to, in evidence. Also the water lot act, approved March 20th, 1851. Also the ordinance regulating wharfage, passed anterior to the date of the contract and lease to plaintiff. And also the ordinance of 28th June, 1850, No. 31, authorising the levy and collection of taxes on water lots. Plaintiff excepted to all the evidence thus offered.

The Court refused the injunction prayed for, and the plaintiffs appealed.

*McHenry*, for appellants.

1st. It was the intention of the legislature that the wharves in the harbour of San Francisco should be kept free from obstruction, and open for the advancement of commerce. Act of 11th of March, 1850, sects. 3, 7, regulating the duties of harbour master, p. 86. Also the act of 1st May, 1850, p. 204. Also the 6th sect. of the first water lot bill, p. 310; statutes of 1851. Also 2nd sect. of the second water lot bill, last paragraph, p. 311. And act confirming appellant's contract.

2nd. The wharf and slips in question have not been granted by the State, by any conveyance which would carry with it the soil covered by the ebb and flow of the tide. The use of it is in the people of this State and of the United States, and it is not susceptible of being conveyed by any title which would authorise the grantee to separate the water from the soil, for the reason that it is a common highway; 3rd sect. Act of Congress, Laws of the United States. 16 Peters, p. 409, 10. 12, 13, 14. 19, 20, and 427, inclusive; (Morton, et al. *v.* Noddele, et al.) see 7 Eng. Com. Law Rep. 93. 113, inclusive; (Blundell and Cotterell,) 12 Eng. Com. Law Rep. p. 397, 8; (Duke of Somerset *v.* Fogerill, 6 Mod. Rep. 73; Warner *v.* Matthews.

3d. The Bay of San Francisco is an arm of the sea. The wharf was erected from the shore out into the Bay, to Ship's Channel. The object is to enable vessels to come alongside, to discharge, &c. A space sufficient to enable them to be brought in, &c., passed to the lessees, as appurtenant to said wharf. 6 . Mass. Rep. 334, Elisha Doane v. The Broad Street Association; Livingston v. Botine, Cow. p. 53.

4th. The slip filled up, is a part of the space which Market street would occupy, were it opened from the bulkhead out into the bay; and the appellants, by the terms of their lease from the city, have a leasehold estate in the said slip. It has never been dedicated to the public as a public street. This could only be done in the mode pointed out by law; private property cannot be taken for public use, without paying a fair equivalent. See 4th article of the act to incorporate the City of San Francisco, passed 12th of April, 1850, and 5th art. of the act of 18th of April, 1851, to incorporate the city, and p. 365.

5th. It is not pretended that the respondents are the owners of any of the water lots described on the map of the water lot survey, and fronting on Market street wharf. And the record shows nothing to justify him in filling up the slip. Even admitting that the effect of the first water lot bill was, to dedicate the premises in question, east of the bulkhead, as a public street, it was such a street as existed at that time; but then the respondents have acted without authority, and in violation of appellant's rights, for the fee is in the State, and under the city government, till opened as prescribed by law. 1 Wend. 269, 70.

6th. Admitting that the premises in question is a street, respondents have acted in violation of appellant's rights in obstructing it. The common council has full power to legislate upon the subject of the streets of the city.

7th. The Court erred in deciding that the lease of the appellants was inoperative, and in rendering judgment for respondents; and in refusing to allow appellants to show that the premises had not been opened to the public as a street, by legal authority; and in admitting respondent's evidence.

A. T. Wilson, for respondent.

Before appellant's can recover, they must establish a right in

the *locus in quo*, the so-called slip; that it was their property at the time the act complained of was committed.   If it is public property, they cannot recover for an injury done to it, although the injury was wanton, and without colour of right, unless the act injured them in some peculiar manner, different from what it injured others.   They must recover, if at all, on the strength of their right, not on the weakness of any right or title in us.

They claim on the ground that they have a conveyance and divers assurances, as they allege, granting them an exclusive right to the whole of the space below high water mark, of the bay of San Francisco, known and laid down in the map of the City of San Francisco as Market street, and claim the right to exclude not only us for the term of eight years, but a right exclusive of all citizens and everybody, to the space aforesaid. And they claim this under an instrument executed between themselves and divers citizens, calling themselves commissioners of the sinking fund.   Which grants to them, Burd and Dennis, among other things, the right, "for the purpose of mooring, loading and discharging craft of all kinds, unless, &c., the exclusive use for the space of eight years, in California street, and end of Market street, from the western beginning of the wharf at the foot of said Market street, to its eastern termination;" and claim that this grant was conferred by both the City and State legislature.   Now if that grant was valid in its inception, or made so, before the defendant did the acts complained of, then not only he, but every body else, might be excluded from the *locus in quo* by plaintiffs, and this whether they owned lands along side of the street or not.   The *collusive* right in the grantees cannot co-exist with the right to use it by others, as a means of access to private property, or otherwise.   And the use for which it is granted to appellants, to wit, to moor, load, and unload craft, &c., is inconsistent with its use as a means of communication with the land along side of it.   If this Court decide for appellants, it must be on the ground, that their right derived from the commissioners was, at its execution, or was made by the subsequent action of the common council and State legislature, valid; to the exclusion of every body else to the whole space laid down in the map as Market street, from high water mark to East street.   And if so, no owner of land bounded by Market

street, below high water mark, can fill in his lot, so as to make it passable.

The record shows that the respondents' demurrer to the first complaint was sustained, on the ground that appellant had shown no exclusive right to the *locus in quo*. Appellant then filed his supplemental complaint, stating the facts on which he relied, to show his right; these facts, the so-called confirmation by the city and the legislature, are the making of the right.

In support of our first point, see 3 Eq. Dig. 457, 458, sects. 45, 46, 47; Ib. 463, sect. 109; Treitas *v*. Pantos, 11 Younge & Jervis's Rep. 574; 3 Eq. Dig. 74, sects. 18 and 24; Ib. 75, sect. 36. The only statutory authority possessed by the city (in relation to her power to erect wharfs) at the time when the ordinance confirming the contract between the appellants and the commissioners of San Francisco on the 21st April, 1851, may be found in the laws of 1851, from 361 in the 13th sect. of Art. 3d of the City Charter. The authority contained in the act, page 311 of the same volume, was not given to the city, until after the Common Council had done all it had done up to this time towards confirming the grant. The City Charter was passed April 15, 1851, and, *before that*, on the 26th March, the State had, as we say, bound itself, that the space laid down in the map of the city, below high water mark, known as Market street, should remain forever, as it then was, public property. We contend there is no such thing as private property, where the tide ebbs and flows, short of a legislative grant; and the whole space claimed by appellants comes within this description. The first legislation on the subject took place on the 26th March, 1851, when it was public and common to all the world. On that day the legislature confirmed a large number of grants of lots made with reference to a map, on which the whole space claimed by plaintiffs was designated as a public street. Now then we understand that the cases cited by us, to wit, Lessee of White *v*. The City of Cincinnati, 6 Peters, and Beatty *v*. Kurts, 2 Peters; in re Seventeenth street, 1 Wend. 262; in re Lewis street, 2 Wend. 472; Ridge and Altoney streets, 8 Wend. 85; sometimes cited as Livingston *v*. The Mayor, 8 Wend. 85; Wyman *v*. The Mayor, &c. 11 Wend. 486, settle the law, that by confirming and making legal the said grants, the legislature covenanted that the

space then public should remain so; that the State is bound by its grant or covenant, the same as an individual, and cannot disturb the vested rights of one, much less half a hundred individuals.   See opinion of Justice Murray in Morse *v.* Smith, November 23, 1852; Fletcher *v.* Peck, 6 Cranch.   More than half the value of the lots bounded on the street confirmed by the legislature, would be destroyed, if the plaintiff's claim be sustained. The provision of the Charter referred to by plaintiffs in relation to opening of streets, &c. do not affect this case.   It is not a question of opening a street.   It *is, was,* and always has been, open.   The statute applies only where streets are laid out through *private property,* and private property is *taken for* a street. Those places laid down on the map as streets, and which have *never been private property,* have always been open as streets. Private property is always shut, in view of the owner's rights; whether enclosed or not, and to make it public, requires legislation.   The fact that plaintiffs had built a wharf through the centre of Market street cannot help them, if our views as to his rights are correct; for, in building and maintaining the wharf, they were guilty of a misdemeanor.   The fact that they have usurped a part, cannot enable them to maintain an action for the remainder.

The counsel referred to the grants made by the old Ayentimento, by Alcaldes of the city, after its first charter, to divers persons, of lots bounded along Market street, below high water mark; their confirmation by the State according to the decisions above cited, and denying the right of the State now, to interfere with the public use of the street, without the consent of all the grantees.   He also urged that as there was no evidence whatever against Cunningham, there should have been judgment in his favour.

The opinion of the Court was delivered by

MURRAY, Chief Justice.—This was an action commenced in the Court below by Breed and Dennis, lessees of California and Market wharves, to restrain the defendants from filling the space between the north side of Market street wharf, and the north line of Market street, and to recover damages arising from the partial filling up of the same.

The plaintiffs claim an exclusive privilege to collect wharfage and dockage, &c., under a contract entered into with the sinking fund commissioners of San Francisco, and afterwards ratified by the legislature.    Under this contract the plaintiffs constructed the present wharf, leaving a space within the line of Market street sufficient for the mooring of vessels.   For filling up this space, and the consequent obstruction to the plaintiffs' enjoyment and use of the wharf, this action was brought.

Prior to the contract between the sinking fund commissioners and the plaintiffs, this same space had been laid out upon the official map and dedicated as a public street; the Ayentimento of San Francisco had assumed the ownership and control of the soil, and had sold lots upon the line of the street.   So far as the city had any rights in the premises, she had by her own repeated voluntary acts parted with those rights; and any attempt upon her part to assume such rights, by depriving the public of the easement which they had acquired, or denying the purchasers of these lots the right of way, or the privilege of improving their property, except upon the payment of wharfage, or tolls, was clearly illegal.   In addition to these acts of the municipal authorities of this city, the legislature on the 26th of March, 1851, relinquished all rights of the State to certain property heretofore claimed by this city, and confirmed the sales previously made. This act was made in reference to the map of San Francisco, and Market street was recognized as a public street by the language of the act.    The act March 26th, operated as a grant by which property holders along the line of said street, and the public, were entitled to the free enjoyment of the same; and the right or privilege so granted could not be resumed by the State, and was not so resumed by the act of April 28th, 1851, confirming the contract between the appellants and the sinking fund commissioners.    It is useless to cite authorities to maintain the proposition.    So firmly has it become established, that where lots are sold as fronting on, or bounded by, a certain space designated in the conveyance as a street, the use of such space as a street, passes as appurtenant to the grant, and vests in the grantee in common with the public the right of way over such street; that such acts on the part of the grantor constitute a dedication of

such street, and that he cannot afterwards so sell or dispose of it as to alter or defeat such dedication.

Whatever authority the city may possess to enjoin the defendants, by virtue of the power granted in her charter, to regulate wharves, &c., we do not propose to consider; but it is clear that the plaintiffs derived no such right by their lease, and it would be difficult to determine how they can enjoy the exclusive privilege of occupying said wharf consistent with the public easement in said street upon which it is situated, as I have already shown the act of April 28th was passed after the dedication of Market street, and consequently could not interfere with its previous disposition.

The judgment of the Court below is affirmed, with costs.

ANDERSON, Justice.—I concur.