[S. F. No. 12806. In Bank.—April 8, 1929.]

SAN FRANCISCO SULPHUR COMPANY (a Corporation), etc., Appellant, v. COUNTY OF CONTRA COSTA, Respondent.

Marvin C. Hix for Appellant.

Heller, Ehrman, White & McAuliffe, A. B. Tinning and F. Whitney Tenney for Respondent.

Morgan V. Spicer and Vincent Surr, *Amici Curiae.*

PRESTON, J.—The second amended complaint filed February 20, 1926, shows this action to be one by plaintiff as a property owner against the County of Contra Costa to enjoin the levy and collection of a special tax designed to supply a bond fund to retire a quota of the bonds maturing under a street improvement proceeding begun by the said county under the Street Improvement Law of 1907, as amended by the Statutes of 1921, page 312, chapter 232. To said complaint, which was supplemented by additional allegations, a demurrer was interposed by said county. Thereafter a hearing upon the said demurrer was had and the court sustained the same without leave to amend, and on the twenty-sixth day of August, 1927, judgment of dismissal passed in favor of said county, from which plaintiff has appealed.

Appellant assigns three grounds of error. First, that the action of the board of supervisors of said county in creating an assessment district and in causing the improvement to be made therein and in issuing the bonds in payment therefor violated section 18, article XI, of the state constitution; second, that the action of the county in this behalf was also void because a· large portion of the improvement made was upon private property and not upon public thoroughfares; and, lastly, that said tax was so discriminatory in its operation as to be void for this reason.

Appellant meets at the outset the provisions of sections 19 and 20 of the act (Stats. 1921, pp. 324, 325), to the effect that, failing to protest at the time of the completion of the work, the "decision and determination of said board of supervisors . . . shall be final and conclusive as to all matters determined at said hearing and as to all errors, informalities, irregularities, or omissions which said board of supervisors might have avoided or remedied during the progress of the proceedings, or which it can at that time remedy, upon all persons entitled to be heard before said board on said matters, and no bonds and assessment or tax thereafter levied for the payment of the bonds to be issued for said work and expenses shall be held invalid by any court for any error, informality, omission or other defect in the proceedings where the resolution of intention has been actually published as in this act provided, before the said board shall have ordered the work to be done."

And appellant must meet also section 23 of the act (Stats. 1921, p. 327), which reads as follows: "Said bonds by their issuance shall be conclusive evidence of the regularity of all proceedings prior thereto under this act, and after the same are issued, no tax levied or collected for the purpose of paying the principal or interest on said bonds shall be held to be illegal or set aside or refunded by reason of any informality, irregularity, omission or defect in any of the proceedings prior to the issuance of said bonds, nor shall any action or proceeding be thereafter commenced or maintained to cancel or set aside said bonds, or to prevent the payment thereof, or the levy or the collection of a tax for such payment."

Appellant's points will now be considered in the order named. Section 18 of article XI of the constitution,

so far as here involved, reads as follows: "No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year . . . " without the assent of the electors voting at an election to be held for that purpose. Admittedly if the tax here in question may be said to be an indebtedness or liability of the County of Contra Costa, such liability will exceed the current income and revenue for the year in question. But it is our view that the said provision is in no sense applicable to paving and other improvement work done under said act of 1907 as amended in 1921. Under the interpretation as claimed, a vote of the electors would be required in every undertaking of any considerable extent.

It will be noted that the plan provided for in said act is that the supervisors of the county shall act legislatively and as agents of the property owners benefited by the proposed work. The board fixes the boundaries of the district comprising the property believed to be benefited and takes the lead in securing plans and specifications for the paving, the awarding of the contract, the superintendence of the construction, the acceptance of the work when completed and the issuance of the bonds to pay for same. But in all these proceedings the county incurs no liability whatsoever, unless it specifically agrees to donate to the cost of the work. The cost of the proceedings is borne by the property benefited. The resolution of intention provides that for the costs and expenses of the work, bonds will be issued and that a certain portion of the principal will be payable annually and that a special fund for the payment of said bonds will be created by the levy of special assessment taxes upon the land in the district described in said resolution.

Section 22 of the act (Stats. 1921, pp. 326, 327), provides the form of the bond and, so far as material here, the provision is as follows: " . . . This bond is payable out of road district improvement fund number . . . exclusively, . . . and neither said county nor any officer thereof shall be holden for its payment otherwise; but in accordance with said act the Board of Supervisors . . . will annually, at the time of levying other taxes, levy upon all the land in said road improvement district a special assessment tax in an amount clearly sufficient to pay the principal

and interest of said bonds as the same shall become payable. . . . '' Under a fair construction of this provision of the constitution not only is a debt or liability in excess of the current revenue not incurred but no debt or liability is in point of fact incurred by the county. While there is no express California authority on the question, this construction was evidently conceded by the court and parties litigant in the recent case of *City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873], wherein it is said: "It is admitted by the parties that if no municipally owned property be included in the assessment district no questions may arise concerning the constitutional debt limit or the charter tax limit." See the principle considered in *People* v. *Pacheco,* 27 Cal. 175, 207.

This question, however, has been the subject of discussion in many of the other states of the Union, where the rule appears to be practically uniform as follows: "Contracts by a municipality for local improvements, the cost of which is to be borne by the property benefited, form no part of the indebtedness of the municipality within a constitutional limitation thereof. Therefore the municipality has a right to contract for the improvements although their cost, added to the existing indebtedness, exceeds the debt limit." Note 33 A. L. R., page 1415, where decisions from many states are cited. A later note to the same effect is found in 41 A. L. R., page 797.

Counsel cites *Schuster* v. *Oakdale,* 180 Ky. 760 [203 S. W. 715], to the contrary, but in this he is mistaken, for in that case the city actually pledged its credit to the payment of the bonds. The decisions of the state of Kentucky are in point of fact in line with the holding here announced as will appear from examination of the following cases: *German Nat. Bank* v. *Covington,* 164 Ky. 292 [Ann. Cas. 1917B, 189, 175 S. W. 330]; *Tartar* v. *Skaggs,* 184 Ky. 58 [211 S. W. 203]. A case exactly parallel with the case at bar is *City of Bainbridge* v. *Jester,* 157 Ga. 505 [33 A. L. R. 1406, 121 S. E. 798]. (See, also, *Quill* v. *City of Indianapolis,* 124 Ind. 292 [7, L. R. A. 681, 23 N. E. 788].) The case of *Chester* v. *Carmichael,* 187 Cal. 287 [201 Pac. 925], is not in conflict with these views.

We next pass to the contention that the improvements were made upon property not in fact public thor-

oughfares because not dedicated to the public use. We have no hesitancy whatever in holding that under the allegations of said complaint appellant is in no position to attack the sufficiency of the evidence to sustain the action of the board of supervisors in improving these thoroughfares as public streets. The contention of appellant is that as to some of the subdivisions described in the district, the recorded maps of such subdivisions which named streets and thoroughfares were not accepted by the board of supervisors, but, on the contrary, acceptance had been denied, and that as to others thereof accepted, the acceptance though granted was not indorsed upon the maps. It is plain that the making and recordation of these maps was an offer of dedication to the public of these spaces as thoroughfares and public streets. It is also clear from the complaint that no withdrawal of said offer of dedication has ever been made. The mere ordering of the work "done" and the completion thereof by the board of supervisors is, therefore, an implied acceptance of the offer of dedication. Neither party could thereafter successfully contend that the thoroughfares were anything other than public streets. While it is true that the statutory proceedings for express dedication were not literally complied with, ample appears to show that an implied acceptance of dedication offer was made by the board. (*Wolfskill* v. *County of Los Angeles,* 86 Cal. 405 [24 Pac. 1094]; *People* v. *County of Marin,* 103 Cal. 223, 227 [26 L. R. A. 659, 37 Pac. 203]; *Davidow* v. *Griswold,* 23 Cal. App. 188 [137 Pac. 619].) In the case of *Spaulding* v. *Wesson,* 115 Cal. 444 [47 Pac. 249], relied upon by appellant, there was no offer of dedication on behalf of the property owner and nothing to show that either an express or implied offer to dedicate had ever been made. In the case of *County of Inyo* v. *Given,* 183 Cal. 415 [191 Pac. 688], the offer of dedication was withdrawn before the act claimed as an acceptance occurred and moreover said act was not one that legitimately tended to show acceptance.

The last point made by appellant that the discrimination against plaintiff is so great that the proceeding is void for that reason, is untenable under the recent holding of this court in *Municipal Imp. Co.* v. *Thompson,* 201 Cal. 629, 637 [258 Pac. 955], where in a situation almost exactly parallel with this, to wit, where the assessment was not only

equal to the assessed value but equal to the market value of the property, the assessment district was sustained and this too before a contract to let the work had been entered into. (See authorities cited in said case.) ▮ Moreover, inasmuch as all jurisdictional steps were followed, appellant may not be heard now collaterally upon such questions as favoritism in fixing the boundaries of the district or the amount or inequality of the assessment. (See *Noyes* v. *Chambers & DeGolyer*, 202 Cal. 542, 544 [261 Pac. 1006]; *Blake* v. *City of Eureka*, 201 Cal. 643 [258 Pac. 945]; *Watkinson* v. *Vaughn*, 182 Cal. 55, 58 [186 Pac. 753]; *Chase* v. *Trout*, 146 Cal. 350, 357 [80 Pac. 81].)

The judgment of the court below is affirmed.

Curtis, J., Richards, J., Langdon, J., Seawell, J., Waste, C. J., and Shenk, J., concurred.