**NORTHWESTERN PAC. R. CO. v. TOWN OF LARKSPUR et al.**

Circuit Court of Appeals, Ninth Circuit.
December 17, 1929.

No. 5802.

Orrick, Palmer & Dahlquist, of San Francisco, Cal. (Christopher M. Jenks, of San Francisco, Cal., of counsel), for appellant.

Jordan L. Martinelli, of San Rafael, Cal., and H. A. Postlethwaite, of San Francisco, Cal., for appellees.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This was a suit to enjoin the collection of a special assessment and to declare the assessment null and void. From a decree in favor of the defendants, the plaintiff has appealed.

Section 2 of the California Improvement Act of 1911 (St. 1911, p. 732) provides that, whenever the public interest or convenience may require, the city council is authorized and empowered to order the whole or any portion or portions, either in length or width of any one or more of the streets, avenues, lanes, alleys, courts, places, or public ways of any such city to be improved, in the manner therein set forth. Section 3 provides that, before ordering any such work done or improvement made, the city council shall pass a resolution of intention so to do and that the resolution shall be published, as therein provided. Section 4 provides that, whenever the contemplated work or improvement, in the opinion of the city council, is of more than local or ordinary public benefit, and in certain other cases not material here, the city council may make the expense of such work or improvement chargeable upon a district which the city council shall, in its resolution of intention, declare to be the district benefited by such work or improvement, and to be assessed to defray the costs and expenses thereof.

August 10, 1925, the board of trustees of the town of Larkspur adopted a resolution of intention to improve Alexander avenue by the construction of a reinforced concrete bridge over the Northwestern Pacific Railroad tracks, and also to improve certain other streets and avenues in the town, by grading and paving, and otherwise. The resolution of intention recited that the contemplated work and improvement was, in the opinion of the board of trustees, of more than local or ordinary · public benefit, and that the expense of the work and improvement should be chargeable upon a district which the board declared to be the district benefited by the work and improvement and which should be assessed to defray the costs and expenses thereof. The district thus established was bounded and described as follows: "Beginning at the intersection of the Easterly line of the Northwestern Pacific Railroad Right-of-Way with the Southerly boundary line of the Town of Larkspur, and running thence East and North along said boundary line to its intersection with the Northerly line of the Northwestern Pacific Railroad Right-of-Way, on what is known as the (Cut-off to San Rafael) branch, thence Westerly along said line of said Cut off Branch, to its intersection with the Easterly line of the main line Right-of-Way at Baltimore Station, thence due West to the Westerly line of said Main line Right-of-Way, thence Southerly along last above mentioned Right-of-Way line to the Northerly line of Alexander Avenue; thence Westerly along the Northerly line of Alexander Avenue, 125 feet; thence at a right angle Southerly to the Southerly line of Alexander Avenue; thence Easterly along the Southerly line of Alexander Avenue to the Westerly line of the Northwestern Pacific Railroad Right-of Way; thence Southerly along the Westerly line of said Right-of-Way to a point due West of the point of beginning; thence East to the point of beginning."

This description would seem a little indefinite, to say the least. The point of beginning is the intersection of the easterly line of the railroad right of way with the southerly boundary line of the town, which runs due east and west. The next course is east and north along said boundary line to its intersection with the northerly line of the railroad right of way on the San Rafael cut-off. We presume the intention was to run east along the southerly boundary line of the town to its intersection with the eastern boundary line of the town, and thence north along the eastern boundary line to the next point of call. This description at least conforms to the boundaries of the district as they appear on a blueprint found in the record, and no objection was urged against the regularity of any of the proceedings except, the inequality of the assessment. The total cost of the improvements was $57,202.-62, and the total assessment was in the same

amount. The assessment against the property of the railroad company was $12,607.95, or approximately 22 per cent. of the whole. The items going to make up the railroad assessment were: First, one-half the cost of grading and paving Acacia avenue, which runs adjacent and parallel to the railroad right of way, and one-half the engineering and other incidental expenses; second, one-half the cost of constructing the concrete bridge over the railroad tracks, and one-half the engineering and other incidental expenses; and, third, one-half the cost of constructing the retaining wall at the easterly terminus of the bridge to sustain the fill and approach thereto, and one-half the engineering and other incidental expenses.

The jurisdiction of the court below was invoked upon the ground that the assessment constituted a deprivation of property without due process of law and was so palpably and arbitrarily discriminatory against the appellant as to amount to a denial of the equal protection of the law. But the constitutional rights of the appellant were not invaded unless the action of the city council in approving the assessment and apportioning the tax was arbitrary, wholly unwarranted, or a flagrant abuse of authority. Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215. And the mere fact that an undue portion of the cost of some part of the improvement was assessed against the property of the appellant would not violate its constitutional rights, unless the assessment as a whole was arbitrary and discriminatory. Here, we are not informed as to how much property belonging to the appellant was included in the assessment district, or what proportion its property bore to all the property within the district. Without such information it would be impossible to say that an assessment of 22 per cent. of the entire cost against the property of the appellant was unjust, arbitrary, or discriminatory, or even excessive. If the constitutional rights of the appellant have been disregarded, it has failed to demonstrate that fact by the record brought before us.

After the resolution of intention was adopted, the town, through its board of trustees, presented a petition to the State Railroad Commission requesting that body to take evidence and determine the proper division or apportionment of the cost, as between the town and the appellant, for the replacement of the then existing crossing by a new bridge or crossing, as described in the resolution of intention. A hearing was had on this petition, and the Commission ordered and directed the removal of the existing wooden bridge and its replacement by a reinforced concrete structure. It was further ordered that the cost of the new structure and of removing the old should be borne one-half by the town and one-half by the appellant; that the cost of paving up to the new structure should be borne by the town; and that no portion of the cost assessed against the town for the construction and maintenance of the crossing should be assessed by the town in any manner whatsoever against the operative property of the railroad company. For some reason, the matter ended here, and no attempt was made to enforce the order of the Commission by either party. We doubt if the Railroad Commission had authority to take away from the town council any of the powers conferred upon it by law, but in any event the action of the city council in imposing the assessment in question does not seem to contravene the order of the Commission in any way. The cost of paving Acacia avenue was no part of the cost of paving up to the bridge, within the meaning of the order, and if the retaining wall was not a part of the bridge structure, it was apparently chiefly beneficial to the property of the railroad company.

We find no error in the record, and the decree is affirmed.