## COLLINS v. CITY OF PHŒNIX et al.
### No. 6470.

Circuit Court of Appeals, Ninth Circuit.

Dec. 14, 1931.

John W. Ray, of Phoenix, Ariz., for appellant.

Charles Carson, Jr., James E. Nelson, and Kibbey, Bennett, Gust, Smith & Rosenfeld, all of Phoenix, Ariz., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

This is an appeal from judgment of dismissal given upon a motion to dismiss the complaint for lack of sufficient facts to justify the relief prayed for. The appellant predicating jurisdiction upon a diversity of citizenship brought this action in equity in the United States District Court for Arizona to enjoin the further improvement of First street between Van Buren and McDonald Road in the city of Phoenix, under proceedings thereto instituted by the city authorities of Phoenix by resolution No. 5065, and to enjoin the contractor to whom the performance of the street work therein specified had been let from proceeding with the work. Appellant claims that the proceedings are void for certain defects enumerated in the bill. The court had previously denied a motion for an interlocutory injunction and from this order an appeal was taken to this court, and decided in Collins v. City of Phoenix, 26 F.(2d) 753, 754. Appellant also petitioned the Supreme Court for a writ of mandamus to compel the calling in of two additional judges to sit with the District Judge in this case. This application was denied. Ex parte Collins, 277 U. S. 565, 48 S. Ct. 585, 72 L. Ed. 990.

The general nature of the proceedings for improving the streets under the law of the state of Arizona, effective in the city of Phoenix, is briefly stated in our previous opinion. Collins v. City of Phoenix, supra. We will endeavor to dispose of the numerous points urged by the appellant as briefly as may be.

Appellant is the owner of a block of land fronting upon the proposed improvement. The proceedings were initiated by resolution No. 5065 enacted in pursuance of the provisions of Revised Statutes of Arizona T. 7, ch. 13, and the Bond Act, Arizona Statutes 1919, c. 144. The first contention is that these legislative acts of Arizona do not apply to the city of Phoenix. The charter of the city of Phoenix provides that the legislative body thereof can adopt the laws of the state of Arizona in force at the time of the improvement and that when it does so the state statute is in force in Phoenix (charter of Phoenix, ch. 4, § 2, sub. 45), and it is conceded by the appellant that by appropriate action the city could adopt and apply this state law. It is contended, however, that it has not done so. The charter provision referred to is in part as follows: "Whenever in the judgment of the commission, or of the people, the cost and expense of any of the foregoing improvements is to be paid by special assessment on private property, the laws of the state of Arizona in force at the time of the improvement shall govern and control, and all proceedings shall be in conformity therewith. * * *"

Appellant says: "By resolution 5065, it is declared that the city intends to enact certain legislation concerning street improvement on First Street. * * * It is, what it pretends to be, a notice of intention to enact legislation. A notice that we will enact legislation adopting certain procedure contained in the Civil Code."

The point seems to be that this resolution of intention cannot be deemed to be a judgment or determination of the commission that the expense of the improvements should be paid by special assessment because objections might be made to the improvements, the protest might be sustained, the extent of the district might be altered, etc.

The next point is diametrically opposed to that just discussed, for it is claimed that the resolution of intention passed by the city is not really a resolution of intention. It is stated: "An examination of resolution No. 5065, the so-called resolution of intention, discloses that it creates an assessment district and orders the work done and nowhere provides for a time or place when objections may be made or protests filed. It is true that the title of the resolution recites, 'A resolution of the Commission of the City of Phoenix declaring its intention to improve certain portions of First street, etc.'"

Section 2 of the ordinance is then quoted to the general effect that it is the opinion of the commission that the contemplated work is of more than local or ordinary public benefit, and that the said commission "hereby makes the costs and expenses of said work of improvement chargeable upon a district and hereby declares that the district in said city of Phoenix benefited by the said work or improvement, and to be assessed to pay the costs and expenses thereof, in proportion to the benefits," etc., is as thereinafter described.

Appellant states: "This is not a resolution of intention to do. It is a declaration by the legislative body that we have acted on this legislation and direct the improvement to be made."

It is clear, we think, that the resolution of intention is a sufficient declaration of the judgment of the commission within the meaning of the charter to make effective the state law within the city of Phoenix as it relates to this improvement. As to the contention

that such a conclusion converts the so-called resolution of intention from a resolution of intention into an ordinance ordering the work to be done, we think it sufficient to say that the resolution of intention is characterized as a resolution of the commission "declaring its intention to improve certain portions of First Street in the City of Phoenix, and determining that improvement bonds shall issue to represent the costs and expenses thereof." Section 1 of the act declares it the intention of the commission of the city of Phoenix to order the work to be done. Section 2 provides that the assessment shall be chargeable on a district therein described. Section 3 provides for the issuance of bonds therefor under the state statutes which are therein referred to. Section 4 provides for the posting of notices of the proposed improvement and that the city clerk shall certify to the passing of a resolution of intention and cause it to be published, etc. These are the usual provisions of a resolution of intention.

Appellant cites Cooper v. City of Bozeman, 54 Mont. 277, 169 P. 801, by the Supreme Court of Montana; Shapard v. Missoula, 49 Mont. 269, 141 P. 544; and Hinzeman v. City of Deer Lodge, 58 Mont. 369, 193 P. 395, 396, as supporting the proposition that this is not a resolution of intention, but they do not do so.

We are not certain that we have apprehended appellant's point for the reason that the discussion takes rather a broad range. We have taken the view that the appellee takes of this proposition, namely, that it is contended that the commissioners of Phoenix did not act in such fashion as to adopt the state law as the basis for its assessment of the costs of the improvement. As we have pointed out the resolution of intention expressly refers to the statutory law and determines the cost of the improvement should be assessed upon the property benefited. This under the provisions of the charter hereinabove quoted is a sufficient adoption of the statutory method of procedure.

■ The next specification of appellant's brief is entitled "Objection B." The point herein made is that section 525 of Revised Code of Arizona adopted in 1928 which provides that the superintendent of streets shall assess the entire cost of work, including incidental expenses against the lots in the assessment district, is in violation of the Constitution of Arizona, art. 9, § 6, which authorizes the state Legislature to give power to incorporated cities, towns, and villages "to make local improvements by special assessments, or by special taxation of property benefited." The point is that a law which requires the total cost of the improvements to be assessed in a district to be benefited violates the Constitution which confines the amount of the assessment to the amount of the benefits. The argument is that the total benefits may not be as great as the total cost. To further illustrate the nature of the point made by the appellant, we cite the cases to which he calls our attention: Greeley v. People, 60 Ill. 19; City of Chicago v. Adcock, 168 Ill. 221, 48 N. E. 155; Dexter v. Boston, 176 Mass. 247, 57 N. E. 379, 79 Am. St. Rep. 306; White v. Gove, 183 Mass. 333, 67 N. E. 359; Detroit v. Chapin, 112 Mich. 588, 71 N. W. 149, 42 L. R. A. 638; Adams v. Shelbyville, 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. Rep. 484; Walsh v. Barron, 61 Ohio St. 15, 55 N. E. 164, 76 Am. St. Rep. 354; Kettle v. Dallas, 35 Tex. Civ. App. 632, 80 S. W. 874; Smith v. Omaha, 49 Neb. 883, 69 N. W. 402; Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443. This question has been so often considered by the courts that it does not merit consideration in a case where the area of the district is determined by the proper legislative body after an opportunity to object to the inclusion or exclusion of territory benefited. Without discussion or further citation, we call attention to the numerous cases cited in the notes on Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, in Rose's notes, vol. 18, pp. 102, 112, and supplement to Rose's notes, vol. 3, pp. 1007, 1008, 1009. See discussion of the general subject in my dissent in City of San Diego v. A., T. & S. F. Ry. Co. (C. C. A.) 45 F.(2d) 11, 13, 16, and decision of this court in Northwestern Pac. R. Co. v. Town of Larkspur, 36 F.(2d) 554, 556.

■ The next objection specified by the appellant is that the incidental expenses of doing the work are to be added to the assessment therefor in the first instance by the superintendent of streets. It is claimed that the superintendent of streets is not qualified to pass upon his own accounts in making the assessments. This is the almost universal method of making such assessments, and the right of appeal to the local legislative body from the assessment of the superintendent of streets is the remedy for the correction of any error in that regard.

■ The next specification of error is that the city of Phoenix has exceeded its limit of indebtedness and that without a vote of the people an expense is created in the form of incidentals that cannot properly be incurred

by the city. The appellant does not allege that there is not money amply sufficient to pay these expenses from the treasury from the current revenue. This is not an incurred indebtedness, within the meaning of the constitutional provision cited by the appellant. Citing 6 McQuillin, Mun. Corp. § 734, p. 28 (2d Ed.) p. 34, § 2378. See, also, San Francisco Sulphur Co. v. Contra Costa County, 207 Cal. 1, 276 P. 570.

■ The next objection is that the resolution ordering work, No. 5078, was not published at all. It is conceded that the statute does not require it to be published. It expressly so states: "No publication or notice other than that provided for in this chapter shall be necessary to give validity to any of the proceedings provided for therein."

Appellant contends notwithstanding this express provision of the statute that the charter provision requiring publication of resolutions and ordinances must be construed with that statute and that taken together the ordinance must be published as required by the charter. The case of Barber Asphalt Pav. Co. v. Costa, 171 Cal. 138, 152 P. 296, is cited in support of this proposition. Also City of Los Angeles v. Central Trust Co., 173 Cal. 323, 159 P. 1169; Loop Lbr. Co. v. Van Loben Sels, 173 Cal. 228, 159 P. 600; Storke v. Santa Barbara, 76 Cal. App. 40, 244 P. 158.

The charter dealt with in the case of the city of San Jose, California, cited by appellant (Barber Asphalt Pav. Co. v. Costa, 171 Cal. 138, 152 P. 296), depends upon an entirely different situation. There the charter was made supreme over the state law. There the general law was adopted only "where not inconsistent with the express provisions of the charter." See Ransome-Crummey Co. v. S. F. Bennett, 177 Cal. 560, 171 P. 304, dealing with the same charter. See, also, Smith v. Lightston, 182 Cal. 41, 186 P. 769.

The Supreme Court of Arizona in the case of Amish v. Phoenix, 36 Ariz. 21, 282 P. 42, 43, seems to settle this question in principle so far as the city of Phoenix is concerned. It was therein held that the provisions of the charter, contrary to the state law, do not control with reference to the execution of contracts for the paving of streets by special assessment under provisions of the state law adopted by the commissioners of the city of Phoenix for the purposes of such improvement. It is there said: "A provision of this nature is valid as an adoption of the state law for the purpose intended. Buntman v. City of Phoenix, 32 Ariz. 18, 255 P. 490. Since the contract was executed as provided by the statute, the third assignment is without merit."

■ The next specification of error is that inasmuch as the street improvement proceedings involve the issuance of bonds or special assessments, the Constitution for the state of Arizona, art. 7, § 13, provides that the matter must be submitted to the taxpayers. This matter has been decided by the Supreme Court of the state of Arizona, adversely to the appellant's contention. Ainsworth v. Paving Co., 18 Ariz. 243, 158 P. 428.

■ Specification, objection I, of appellant's brief, is predicated on the theory that the size of the assessment district and the inclusion therein of property fronting upon the street, but not upon the paved portions thereof, was for the fraudulent purpose of preventing the plaintiff from exercising the statutory power of protest, which in the event that 50 per cent. of the frontage affected objected to the improvement would deprive the commission of jurisdiction to proceed with the improvement. It should be noted in the first place that this position is entirely inconsistent with objection B. That is to say, in objection B, supra, it is contended that the city commission had no power to make the total assessment chargeable upon the property in the district. This, of course, is based upon the claim that all of the property benefited is not included in the district, consequently, it is claimed the total cost of the improvement is to be imposed upon less property than is actually benefited. The claim here is that the inclusion of other property fronting along the street was improper because of the fraudulent intent on the part of the said commission to forestall an effective veto by the property owners in that by including more property in the district than actually fronted on the improvement they deprived the property holders fronting on the pavement of the veto power which they could otherwise have exercised in the event the entire cost had been placed upon their property by excluding the other property from the assessment district. Of course this inconsistency of the appellant's position does not solve the problem presented by the objections. The first objection (I) we have already disposed of as untenable. It is certainly a novel proposition for a property holder to object to the inclusion within the taxable district of property which is thereby required to bear a part of the burden which would otherwise fall upon him. The law is that the size of the assessment district is to be

determined by the legislative body under the laws of Arizona subject to the right of the property holders to be heard as to the size of the district, and to a readjustment of the boundary lines of the assessment district after the hearing of the property holders interested therein. As this point has been so often and so thoroughly settled, we content ourselves with citation of the statutes of Arizona and the decisions of that state and others upon the subject: Paragraphs 1957, 1954, 1955, 1960, Rev. St. 1913 (Civil Code of Arizona); Bates v. Twist, 138 Cal. 52, 70 P. 1023; McRoberts v. Phoenix, 25 Ariz. 466, 471, 218 P. 994; City of Phoenix v. Southwest Flour & Feed Co., 31 Ariz. 219, 250 P. 1060.

The real point to appellant's objection is that by increasing the size of the district more frontage was introduced within the district, and the property holders more vitally interested by reason of the fact that the improvement was in front of their property were thereby prevented from effectively protesting against the entire improvement. It is claimed that this plan was concocted with the fraudulent view of preventing this protest and that it is the intention of the superintendent of streets, when the time comes to make the assessment, to place a nominal assessment against all the lots other than the property of appellant and others fronting upon the major portion of the improvement. With reference to this proposition it should be said that while the appellant did protest against the improvement, and his protests were overruled, he did not protest or file objections to the size of the district. The remedy for any injustice in regard to the size of the district was in the first instance at least, by an application to the city commission for change of the boundaries thereof. This was not done, and for that reason such objection may not now be made the basis of an action of the court in equity. The appellant has not pursued his legal remedies and is therefore in no position to invoke the powers of a court of equity to secure the relief which he might have secured by appropriate appeal to the commission. Neither the allegation that the commission had acted fraudulently, nor the claim that they intend to carry out the fraud, justify the interposition of a court of equity at this time. The allegation that the superintendent of streets intends to violate the law in the making of an assessment for an improvement which appellant seeks to prevent is, to say the least, premature, particularly in view of his right of appeal from such assessment. Appellant cannot invoke the powers of a court of equity until he has exhausted his legal remedies in an effort to secure a fair assessment, and these legal remedies include those provided by the law for the improvement of streets here in question. San Francisco Sulphur Co. v. Contra Costa County, 207 Cal. 1, 7, 276 P. 570; Teeter v. City of Los Angeles, 209 Cal. 685, 290 P. 11; Oak Hill Water Co. v. Gillette, 13 Cal. App. 605, 110 P. 316; Ainsworth v. Paving Co., 18 Ariz. 243, 158 P. 428; City of Globe v. Willis, 16 Ariz. 378, 146 P. 544; and by this court on the former appeal in this case, Collins v. City of Phoenix, 26 F.(2d) 753, 754, supra. The point is without merit.

The next objection, specification G, is that the proceedings are violative of section 9 of article 9 of the Constitution of Arizona, which requires that every law which imposes a tax shall state the tax and the object for which it shall be applied, "and it shall not be sufficient to refer to any other law to fix such tax or object." It is sufficient to say that the ordinance ordering work in this case does not impose a tax within the meaning of the Constitution of Arizona referred to, nor is the assessment proposed such a tax. We think it is unnecessary to cite any authority upon this subject as the point is too well established in this type of proceeding to merit discussion. We refer, however, to 5 McQuillin, Mun. Corp. § 2165, p. 570. The case cited by the appellant in support of his contention, Trowbridge v. City of Detroit, 99 Mich. 443, 58 N. W. 368, is not applicable to proceedings of municipal corporations for improvement of streets.

The specification, objection H in appellant's brief, is of a more serious character. Appellant alleges that a portion of the street ordered improved by the legislative authority of the city of Phoenix is not and never was a public street, "that it is a private easement and right of way created by deed of record." One claim of appellant is that the taking of a private easement to improve it as a street would be a taking of property without due process of law, but he is not in a position to make that complaint, as he does not claim to own the property alleged to be so taken. The real question involved is whether or not the city can assess the costs of improving private property upon the appellant's property. As appellant states it: "The city does propose to take plaintiff's property, his assessment, to pay the costs and expenses of improving the private property of another."

The answer of the appellee to this conten-

tion is twofold. It is first claimed that under Revised Code of 1928, § 550, the city commissioners were authorized to improve any street "now open," and that although the street is a private easement it can be so improved as a street as it is clear from the allegations of the complaint that this street is "now open." The statute (section 550, Rev. Code of Arizona 1928) referred to defines a "street" as follows: "Avenues, alleys, highways, lanes, crossings, intersections, courts, places and grounds now open or dedicated or hereafter opened or dedicated to public use."

The law in force at the time these proceedings were instituted on that subject was paragraph 1953, R. S. of Arizona 1913: "All streets, lanes, alleys, places, courts, avenues, boulevards, highways, crossings, intersections, and public ways in the municipalities of this state now open, or dedicated, or which hereafter may be opened or dedicated to public use, shall be deemed and held to be open public streets," etc.

Appellees cite no decision of the Supreme Court of Arizona construing this statute. While we are, therefore, loath to attempt a construction of the statute, we think it is clear that this statute would not justify the legislative authority of the city in improving property which, although for some reason, open or used for public street, did not belong to the public. Such a private way would not be a "public street" within the meaning of the statute. The opening of a street is usually held to be an offer to dedicate it to the public. In order to complete the dedication and constitute the open street a public street, there must be an acceptance of the proposed dedication. This may usually be implied from mere user thereof by the public. If a street were open with the knowledge and consent of the owner and after such opening the authorities of the city enacted ordinances for its improvement, their enactment would, we think, constitute an acceptance of the dedication and ipso facto constitute the street a public street. See San Francisco S. Co. v. Contra Costa County, 207 Cal. 1, 6, 276 P. 570, supra. The Arizona statute above quoted (paragraph 1953, R. S.

Ariz. 1913) is taken bodily from the Vrooman Act of California (St. Cal. 1885, p. 147, § 1).

The attempt to improve private property under the Vrooman Act of California has been uniformly held unlawful under the Street Law of California. Assessments to pay for such improvements are void. Spaulding v. Bradley, 79 Cal. 449, 22 P. 47; Spaulding v. Wesson, 115 Cal. 441, 47 P. 249; Bou v. Willits, 61 Cal. App. 32, 214 P. 519. The Legislature of California has attempted to meet the situation arising from many defective dedications and acceptances of streets by providing that if title is made to the street before a judicial determination of the invalidity of the assessment the assessment is not invalidated by the delay in the acquisition of the title to the street. See decision of the California Supreme Court in Rice v. Hanrahan Co., 210 Cal. 625, 293 P. 57.

The authorization of the Legislature of Arizona to improve all streets "now open" would no doubt operate as an acceptance by the public of any such streets theretofore opened for public use, but in the teeth of the allegation that First street in Phoenix is a private right of way and not a public street, it cannot be assumed that the street is a public street even if it is "now open." We may suspect that there has been a dedication and an acceptance of the street, but the ultimate fact is ownership, and that is expressly alleged to be private and not public.

It has been held in other jurisdictions that the expense of improving private property cannot be assessed upon other private property. City of Leavenworth v. Laing, 6 Kan. 274; Culver v. Yonkers, 80 App. Div. 309, 80 N. Y. S. 1034; Speir v. New Utrecht, 121 N. Y. 420, 24 N. E. 692; Lorenz v. Armstrong, 3 Mo. App. 574; In re Rhinelander, 68 N. Y. 105; Reiff v. City of Portland, 71 Or. 421, 141 P. 167, 142 P. 827, L. R. A. 1915D, 772; Smith v. Smythe, 197 N. Y. 457, 90 N. E. 1121, 35 L. R. A. (N. S.) 524. For this reason the court erred in sustaining the motion to dismiss the complaint.

Decree reversed.