[Civ. No. 7149.    Fourth Dist.    Feb. 25, 1964.]

SYLVIA D. TISCHAUSER et al., Plaintiffs and Respondents v. CITY OF NEWPORT BEACH, Defendant and Appellant.

Walter W. Charamza, City Attorney, Ball, Hunt & Hart and Robert N. Cleaves for Defendant and Appellant.

Carl C. Cowles and Fred D. Johnston for Plaintiffs and Respondents.

BROWN (Gerald), J.—Plaintiffs represent eight owners of lots bordering the south side of Edgewater Avenue in the City of Newport Beach, California. This action, commenced in December 1960, concerns ownership of the areas of Edgewater Avenue immediately to the north of the respective lots of plaintiffs. From a judgment quieting title to the disputed areas in favor of the plaintiffs, except for an easement "for ordinary street purposes" of a 6-foot strip on which there was a sidewalk, water mains and a lighting system, the defendant City of Newport Beach (hereafter called the City) has appealed. The principal contention of the City is that it owns an easement title for street purposes in the entire 40-foot width of Edgewater Avenue, based upon an offer of dedication which was later accepted. We agree with this contention.

The background of the action is as follows: In 1906 the East Newport Town Company (hereafter called Town Company) owned all of the real property within Block A East Newport. The Town Company prepared a subdivision map of Block A containing streets, alleys and lots, and presented it to the Orange County Board of Supervisors. At that time the applicable law was the Subdivision Act of 1893 as amended in 1901 (Stats. 1893, ch. 80, p. 96; Stats. 1901, ch. 124, p. 288) which provided in part: "Section 3. The map or plat so made, acknowledged, and certified shall be presented to the governing body having control of the streets, roads, alleys, and highways in the territory shown on the map or plat, and said governing body shall indorse thereon which streets, roads, alleys, and highways, offered by said map or plat, they accept on behalf of the public, and thereupon such streets, roads, alleys, and highways, only as have been thus

accepted, shall be and become dedicated to public use. When so indorsed, and not before, said map or plat shall be recorded in the office of the county recorder of the county in which the city, town, addition, or subdivision is situated, in a book kept for that purpose.''

The board of supervisors approved and accepted the map of Block A as the official plotting of the tract ''but not as regards county roads.'' A minute order to this effect was made, but was not recorded. The map, however, was recorded. It contained a resolution certified by each member of the Board of Supervisors, attested by the clerk, that the map was adopted as the official map of Block A. No endorsement was made thereon with respect to streets, roads, or alleys, even though streets and alleys were included on the map. Among them was Buena Vista Boulevard, later changed to Edgewater Avenue. For convenience we shall hereafter refer to said boulevard as being Edgewater Avenue in all instances.

After recording the map the Town Company sold lots to the public by lot numbers with reference to the recorded map. Plaintiffs are successors in interest to certain original grantees within the subdivision and together own 11½ lots which front upon Edgewater Avenue.

The record, which we have studied in entirety, is devoid of any action of the Town Company which may be construed as treating the streets of Block A as anything other than public streets. From the point of view of the city, the following events took place, based upon evidence which was received or offered and should have been admitted: The city was incorporated September 1, 1906; in 1908 the city vacated a portion of Edgewater Avenue (east of plaintiffs' lots) and referred to it as ''a public street in the City of Newport Beach.'' In 1915 the city adopted an official map of a portion of the city, dedicating and declaring the streets thereon, including Edgewater Avenue, to be open public streets; this resolution was recorded. In 1916 the city adopted an ordinance concerning grades of certain streets, including Edgewater Avenue. In 1922 the city adopted a resolution of intention to improve certain streets with street lighting facilities; the disputed area was included. In 1927 the city adopted an ordinance accepting all streets then or previously offered for dedication as shown on any recorded map; this included Edgewater Avenue. Also in 1927 the Town Company conveyed to the City a 100-foot-wide strip in Block A subdivision lying immediately to the north of Edgewater Avenue, Edgewater being described in the deed as ''forty feet in width.''

The trial court's factual finding that this 100-foot strip was not and was never intended to be a part of the subdivision of Block A has no support in the record, which clearly establishes without dispute that the 100-foot strip was within the north border of the subdivision.

In 1928 the City commenced maintaining trash containers along the disputed area; the same year the city changed the name of "That certain public street known as Buena Vista Boulevard" to Edgewater Avenue. In 1929 the city established and has maintained a lifeguard station along the disputed area. In 1931 the city adopted a resolution calling for the installation of street lighting equipment along certain streets, including the disputed area, but due to protest action thereon was discontinued.

Shortly after the subdivision was established in 1906, a sidewalk was constructed over the southerly 6 feet of Edgewater Avenue, and was thereafter maintained, along with street lighting facilities, by the city. The plaintiffs concede and the court found this six foot strip was for street purposes.

About 1931 private beach signs began to appear in the disputed areas and were displayed off and on and in various forms until the time suit was brought. Some of the parties constructed improvements in front of their lots within Edgewater Avenue, consisting of lawns, shrubbery, planters, bushes or fences and gates. In 1936 a pier was constructed over the disputed property pursuant to United States War Department permit. Thereafter, other piers and two concrete bulkheads were erected according to permits issued by the city. The channel occupying the 100-foot strip, which had been deeded to the city in 1927, was dredged and the disputed area was twice replenished with sand through Orange County improvement bonds. No taxes were assessed against any of the properties in dispute.

The trial court found, among other things, that the resolution of the Orange County Board of Supervisors approving and accepting the map of subdivision Block A East Newport "as the official plotting of said tract but not as regards county roads" constituted a specific statement by the board that it "did not accept said roads" including Edgewater Avenue. The resolution cannot be so construed. By its terms the resolution affirmatively accepted the map as the official plotting of the tract but not as regards county

roads. There was no statement, specific or otherwise, that the board "did not accept said roads."

The court further found that the action of the board put an end to the offer to dedicate, that it killed and terminated the offer, and it was never renewed, expressly or by implication by recording the map or otherwise; that plaintiffs acquired title to the entire width of the disputed areas by reason of adverse possession; that any use of these areas by the public was with permission of plaintiffs or their predecessors; that the disputed areas were never used by the city "or public as a public street or as a public beach or for public access to Newport Bay or for any other public purpose." These findings are unsupported by the law, the facts, or both.

There is no dispute that in presenting the map to the board of supervisors, the Town Company offered to dedicate the streets shown thereon, and intended the streets to be given over to public use. In approving the plotting of the map the board necessarily approved the width and alignment of every street shown thereon. The map showed both lots and streets, and every line depicting a street also depicts the boundary of a lot and the one cannot be approved without setting the limits of the other. Such action cannot be termed a rejection.

Dedication is not governed by the ordinary rules applicable to the law of contracts. "Considering dedication as a voluntary transfer of an interest in land, it partakes both of the nature of a grant and of a gift, and is governed by the fundamental principles which control such transactions." (*County of Inyo* v. *Given*, 183 Cal. 415, 418 [191 P. 688], quoted in *Union Transp. Co.* v. *Sacramento County*, 42 Cal.2d 235, 240 [267 P.2d 10].)

In *San Francisco Sulphur Co.* v. *County of Contra Costa*, 207 Cal. 1 [276 P. 570], it was held that the rejection by the Board of Supervisors of certain streets on a map presented to it did not terminate the offer, and that the offer could be accepted later by the county in the absence of a revocation. The court said: "The contention of appellant is that as to some of the subdivisions described in the district, the recorded maps of such subdivisions which named streets and thoroughfares were not accepted by the board of supervisors, but, on the contrary, acceptance had been denied, and that as to others thereof accepted, the acceptance though granted was not indorsed upon the maps. It is plain that the making

and recordation of these maps was an offer of dedication to the public of these spaces as thoroughfares and public streets. It is also clear from the complaint that no withdrawal of said offer of dedication has ever been made. The mere ordering of the work 'done' and the completion thereof by the board of supervisors is, therefore, an implied acceptance of the offer of dedication. Neither party could thereafter successfully contend that the thoroughfares were anything other than public streets. While it is true that the statutory proceedings for express dedication were not literally complied with, ample appears to show that an implied acceptance of dedication offer was made by the board. [Citing cases.]'' (P. 6.)

An intent to dedicate land to public use can be manifested in every conceivable way that an intention of a person can be established. (*People* v. *County of Marin,* 103 Cal. 223 [37 P. 203, 26 L.R.A. 659]; *Smith* v. *Kraintz,* 201 Cal.App.2d 696 [20 Cal.Rptr. 471]; *Wheeler* v. *City of Oakland,* 35 Cal. App. 671 [170 P. 864].) The act of filing for record a map of property showing lots separated by defined areas named as streets operates as an offer to dedicate the street areas to public use. (*Niles* v. *City of Los Angeles,* 125 Cal. 572 [58 P. 190]; *Eltinge* v. *Santos,* 171 Cal. 278 [152 P. 915, Ann.Cas. 1917A 1143]; *San Francisco Sulphur Co.* v. *County of Contra Costa, supra,* 207 Cal. 1.) A sale by the landowner of lots by reference to a recorded map will repeat and reinforce an offer to dedicate streets shown on the map. (*Berton* v. *All Persons,* 176 Cal. 610 [170 P. 151]; *County of Orange* v. *Cole,* 96 Cal.App.2d 163 [215 P.2d 41].)

In the case of *City of Yuba City* v. *Consolidated Mausoleum Syndicate,* 207 Cal. 587 [279 P. 427, 66 A.L.R. 318], it was held that an offer to dedicate was made by recording a map showing the disputed area as a street and by selling lots on either side of the street by reference to the lot numbers. The court held this was an offer of dedication which remained open for 31 years when the city accepted it by placing a sewer in the disputed area and grading it as a street.

In the case before us the original offer to dedicate in 1906 remained open. It was not rejected by the board of supervisors. Their words, ''but not as regards county roads'' do not constitute a rejection of an offer to dedicate. The fact that the words were not intended or construed as a rejection is shown by the many acts of the City evidenced in 1908, 1915, 1916, 1922, 1927, 1928, 1929 and 1931 by which

it treated Edgewater Avenue as a public street or area. In addition no taxes were imposed against the street area. ▮ The Town Company's intent to continue its offer of dedication is shown by its acts in selling the lots shown on the map by reference thereto and by its 1927 deed referring to Edgewater Avenue "forty feet in width."

▮ The undisputed evidence establishes that the offer of dedication was made, was not rejected and that the offer remained open, and was accepted. (*McKinney* v. *Ruderman*, 203 Cal.App.2d 109, 115-116 [21 Cal.Rptr. 263].)

▮ Within a short time after the offer of dedication of Edgewater Avenue a sidewalk for street purposes was maintained in the southerly 6 feet thereof. This constituted an acceptance of the entire width offered for dedication. (*Southern Pacific R.R. Co.* v. *Ferris*, 93 Cal. 263, 264-265 [28 P. 828, 18 L.R.A. 510]; *Richardson* v. *O'Hanrahan*, 83 Cal.App. 415, 423 [256 P. 1103]; *City of Santa Ana* v. *Santa Ana Valley Irrigation Co.*, 163 Cal. 211, 219 [124 P. 847].) Further acts which constituted affirmation of acceptance have been recited above.

▮ Acceptance of dedication may be established by formal official action, or by official act of dominion over the property, such as by maintenance and repair work, or by public user, the last two elements usually coexisting. (*Smith* v. *Kraintz, supra,* 201 Cal.App.2d 696, 701.) See cases collected in 15 Cal.Jur.2d § 51, p. 335. All three of these types of acceptance exist in the instant case. Any one is sufficient.

The events evidencing the offer of dedication and its acceptance occurred before any of the acts of adverse possession relied upon by plaintiffs.

▮ Plaintiffs contend that the disputed area cannot be a street because a part or all the area is covered with water at high tide. This contention is directly contrary to the settled law of this state. For over one hundred years the courts of California have held without exception that streets can be dedicated in land that is as much as 20 feet under water. (15 Cal.Jur.2d § 3, p. 261.) See also *Breed* v. *Cunningham*, 2 Cal. 361 (land under San Francisco Bay); and *Henry Cowell Lime & Cement Co.* v. *State*, 18 Cal.2d 169 [114 P.2d 331] (water lot and street under San Francisco Bay).

▮ Adverse possession is not available against publicly owned property.

In view of our holding it is unnecessary to consider the remaining issues raised by the parties.

Judgment reversed, and case remanded for further proceedings consistent with this opinion.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 23, 1964, and respondents' petition for a hearing by the Supreme Court was denied April 22, 1964.