[Civ. No. 9838.  Third Dist.  July 20, 1960.]

ARLETA METZGER, as Administratrix, etc., Respondent, v. DALE BOSE et al., Appellants.

Glenn D. Newton and William W. Coshow for Appellants.

William H. Phelps for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment in an action brought to enjoin defendants-appellants from obstructing an abandoned county road and from preventing the use thereof by plaintiff-respondent D. Jack Metzger and his customers in his operation of a lodge, bar and motel. The property involved approximates the southwest quarter of the southeast quarter of Section 30, Township 38 North, Range 4 East, M.D.B. & M. In 1950 respondent recorded a land survey of the involved property in Land Surveys Book 12 at page 7 thereof, Records of Shasta County. This survey shows that the land included therein was described in four parcels. Ten days after recording this survey respondent conveyed to appellants approximately 200 acres of land, including Parcel 4 as shown on the survey, which parcel embraced approximately 35 acres. This left respondent owning Lots 1, 2 and 3 located in the northeast portion of the survey. The deed described Parcel 4 as being shown on "that certain Survey Map filed in Book 12 of Land Surveys at Page 7 thereof, and being a portion of the SW¼ of the SE¼ of Section 30, Township 38 North, Range 4 East, M.D.B. & M." The survey, by dotted lines, indicated the existence of a county road crossing the property surveyed. This road entered upon the surveyed land at the southeast corner thereof, progressed northerly along the east line to about the midpoint, a distance of approximately 740 feet, then turned northwesterly, crossed Parcel Number 3 and entered Parcel Number 4, proceeding across the same to and beyond the westerly boundary of the surveyed land. The road was an old county road, one witness testifying that he had lived in that vicinity over 60 years and that the road had been used all that time as a public county road maintained by the county. It was a 40-foot roadway. The deed from respondent to appellants reserved no rights in the roadway nor made any reference thereto save the reference to the land survey. The road served the land retained by respondent, who, at the time he began this action, was conducting thereon a fishing and hunting lodge, a motel and a bar. Sometime in 1954, by due proceedings, the county abandoned that portion of the road which crossed appellants' land. In lieu of the old road the county obtained from appellants a right of way for a new road which also crossed their land southerly from the old

road. The county constructed the new road and thereafter appellants closed the old road. Claiming that, notwithstanding the abandonment by the county, he had a private right of way for the use of himself and his patrons over and along the abandoned road, respondent brought this action.

The new road, like the old road, enters the surveyed land at the southeast corner, then proceeds a short distance west, then turns northwesterly in a straight line to and across the west boundary of the surveyed land, whereas the old road, as noted, ran north along the easterly boundary about 740 feet, where it turned northwesterly. Respondent's buildings front on the old road as it crosses through Parcel Number 3 before entering appellants' land and the county still maintains it to that point. Respondent, therefore, has access to the public road, but his property is left on a cul-de-sac. Visitors and patrons, to reach his place must leave the main road, turn northerly along the old road still maintained and thence northwesterly to respondent's place, a distance of approximately eight or nine hundred feet in all. On leaving they must return over the route they came. There was testimony that this cul-de-sac arrangement materially damaged the business conducted by respondent and lowered the value of his property. The trial court found that respondent was ''the owner of an easement and right of way for road purposes over the lands adjacent and contiguous to his said parcel of property to the west of same, the exact location of said easement and right of way for road purposes being the former County Road which was abandoned by the County of Shasta in the year 1955.'' The court further found that prior to the road abandonment respondent had expended ''a large sum of money in erecting a resort, motel and fishing facilities on his property''; that for many years visitors and the patrons of his business had traveled over the old road from the west in order to reach his place; that the general public, up to about March 15, 1956, used the road and so passed immediately in front of respondent's resort, which use had existed for 40 years; that on March 15, 1956, appellants erected a barricade on the abandoned road; that the barricade destroyed access to respondent's place from the north and west and reduced the number of accesses to his property from two to one, so that his property could thereafter be reached from the west and north only by traveling a circuitous route; that respondent suffered irreparable damages and would continue to suffer the same if the barricades were maintained.

Appellants contend that there is no support for the finding of a private way and we agree.

First, it is not claimed that before respondent conveyed to appellant he possessed any rights in the use of the county road other than those held in common with all of the public and in addition thereto abutter's rights commonly owned by all those who own land fronting on a public way. ▉▉ When respondent conveyed to appellants, the abutter's rights along the road as it passed through appellants' land passed to them as new abutting owners. Respondent retained abutter's rights only as to the part of the county road running through the land he retained. But these rights gave him no power to compel the public to maintain for his use the county road in its existing location. (25 Cal.Jur.2d 33, Highways and Streets, § 175.) ▉ The rule is there stated as follows:

"Abutting property owners have no vested right in the continued existence of a highway in a specific location. A highway may be relocated in the public interest, provided abutting owners are not deprived of access to their property. This is so though the relocation may injure their business. Though rights acquired by the owner of property abutting on a city street may not be taken away from him, the owner of property abutting on a county highway may not insist that the public maintain the road for his private convenience and use, if public interest requires its discontinuance. The establishment of highways creates an easement for such time only as the public necessity and convenience may require, and no permanent obligation in favor of an abutter that it shall always exist is involved. On the contrary, he must be deemed to have acquired his property with notice of the statute providing for the vacation of highways. . . .

▉ "On abandonment of a public easement in a road, an abutting landowner's right to the use of the public easement is terminated."

But it is claimed, and this appears to have been the view of the trial court, that because the conveyance was made by use of a description contained in a recorded land survey which indicated the presence of a public way, a right of way, by implication, was reserved to the grantor for the benefit of the retained lands, thus casting a servitude upon the land conveyed and reserving an interest therein. ▉ It is familiar law that if one has subdivided land and conveys a portion thereof by reference to a recorded or exhibited subdivision map his grant will be construed as carrying for the

benefit of the portion conveyed such easements with respect to other portions as appear on the subdivision map. The rule rests upon estoppel. It is stated in 17 California Jurisprudence 2d 105, Easements, section 12:

"By way of estoppel a sale of lots with reference to a map that exhibits the lots and streets as they lie with relation to each other gives the grantees of such lots a private easement in the streets shown, for ingress and egress and for any other use proper to a private way. And where there is no map but streets are marked on the ground and the lots are sold on the representation that such streets exist the same principle applies. This private easement is entirely independent of the fact of dedication to public use. It is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law. It embraces not only the street which abuts on the particular lot in question and such other streets as may lead therefrom to some public highway or public place, but all the streets shown on the map. It will be enforced in equity with respect to all the streets which the particular lot owner has occasion to use. . . .

"The fact that the map has not been filed for record and is not filed until after execution of the deed, or that the lots are sold with reference to a sales map used by the grantor, which map is not quite the same as the recorded map, does not prevent one who purchases in reliance on such a map from asserting his easements against a subsequent grantee of his grantor where the subsequent purchaser had notice, actual or constructive, of the claimed easement." (See also *Danielson* v. *Sykes,* 157 Cal. 686, 689 [109 P. 87, 28 L.R.A. N.S. 1024], and *Prescott* v. *Edwards,* 117 Cal. 298, 303 [49 P. 178, 59 Am.St.Rep. 186].)

In the last case cited, the court, quoting from *Grogan* v. *Hayward,* 4 F. 161 [6 Sawy. 498], said with respect to the rights of the public and the purchaser by plat:

" '. . . In the one case the acceptance completes the transfer of the property, or easement in it, from the owner to the public; in the other case, the contract with the owner estops him from asserting any interest, except in common with the purchasers from him.'

". . . 'The sale by the map, or with reference to the streets upon it, was a sale not merely for the price named in the deed, but for the further consideration that the streets and public grounds designated on the map should forever be opened to the purchaser, and to any subsequent purchasers in the town.

This was an essential part of the consideration. The purchaser took not merely the interest of the grantor in the land described in his deed, but, as appurtenant to it, an easement in the streets and in the public grounds named, with an implied covenant that subsequent purchasers should be entitled to the same rights.' "

■ Nevertheless, the rule relied upon cannot sustain the judgment here. There can be no estoppel that compels appellants to cede to respondent an interest in their land. This was not a case of conveyance by reference to a subdivision map which could stand as a representation of the existence of easements. The map referred to was merely a land survey and appears on its face to have been that and nothing more. It does not purport to make any representation as to private easements either granted or reserved although it indicates the existence of a county road across the land conveyed and the land not conveyed. It does not pretend to chart the course of the public road and there is no reason to suppose, in the absence of anything else, that the reference to a public road carried any implications as to rights over the public road or in the land occupied thereby beyond the rights belonging to the public in general. Both grantor and grantee understood the significance of the existence of the public road. They both had notice of the law providing for the vacation of the road and what the rights of each should be if such action was taken. Surely they cannot be considered as having had anything else in contemplation merely because, for convenience, the survey had been made and recorded and the deed had referred thereto for descriptive purposes. By way of illustration suppose the county had not only abandoned the road where it passed through appellants' lands, but also had abandoned the road for miles beyond the point where it emerged from appellants' lands. Could it be said that appellants would in any way have been estopped from forbidding the use within their boundaries of the abandoned roadway? We think not. ■ It is pure coincidence that the county abandoned the old road only where it passed through appellants' lands, although the public action is probably explained by the making of the new road across their lands in proximity to the abandoned road. Appellants, since respondent's deed to them, have owned the land occupied by the public road subject to the right of the public to maintain the road for public use. When the public abandoned that right, the title of appellants was freed of the

servitude and we find nothing in the facts justifying an implied reservation of a private right in respondent.

The judgment appealed from is reversed.

Peek, J., and Schottky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 14, 1960.