[No. E007828. Fourth Dist., Div. Two. July 16, 1991.]

JON D. MIKELS et al., Plaintiffs and Appellants, v.
JOHN RAGER et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of section IV, subsection B.

**COUNSEL**

Marjorie M. Mikels for Plaintiffs and Appellants.

Pamela King, Jeffrey King, Rager & Winstead and John Rager for Defendants and Respondents.

**OPINION**

**TIMLIN, J.—**

I

INTRODUCTION

This case involves a purported roadway easement (easement) which the King family alleges exists in favor of the King family over land owned by the Mikels family in the City of Rancho Cucamonga. The Mikelses bought the land in question (Parcel No. 1) from Richwood Development Inc., which had apparently acquired it from the Desimones, who had purchased it from the Kings. John Rager (Rager), a King family member, allegedly acted as the

Desimones' agent in connection with the sale to the Mikelses. According to the Mikelses, Rager never told them that the Kings claimed that the property was subject to such an easement in favor of the Kings, a claim based in part on an unrecorded agreement between the Kings and the Desimones. Therefore, when, after the sale of the property by the Desimones to the Mikelses, Rager allegedly cut the chain on their gate which crossed the claimed easement area and the King family began to use that area to cross their property, Jon and Marjorie Mikels (the Mikelses) sued John Rager, Jennifer King Rager, Jeffrey King, Pamela King, and Gertrude King Hartmann individually, and Gertrude King Hartmann, Jennifer Rager and Stanley Mussell, Jr., as Trustees under the trust created by the Will of John Lewis King, deceased (collectively the Kings) for declaratory relief, trespass and injunction.

The Kings cross-complained for declaratory relief, quiet title, and injunction, seeking to establish alternatively that they never transferred to the Desimones title to that portion of the property depicted as the location of "Almond Street," or that they are the legal owners of an easement by implication over it, and/or that the Mikelses' ownership of the roadway is subject to the use of the Kings and/or the general public because of the offer of dedication on Parcel Map No. 4013.

As part of the allegations of their second amended cross-complaint, the Kings alleged that before Parcel Map No. 4013 was recorded, they entered into a written agreement with the Desimones to sell Parcel No. 1 to the Desimones, and that this agreement (the Desimone Agreement) provided that the buyer (the Desimones) "hereby grants to or creates in the Seller a non-exclusive easement on Almond Road," which is the location of the purported easement. In their second cause of action for an easement by implication, the Kings alleged that "By virtue of the Desimone Agreement, the requirements of the County of San Bernardino for approval of Parcel Map No. 4013 and the actual use of the Disputed Roadway by [the Kings] and those other persons given permission for use by [the Kings], [the Kings] are entitled to, and are the owners of legal title to, an easement by implication across the entirety of the Disputed Roadway for purpose of traversing between Carnelian Street and the improved portion of Almond Street to the west of Parcel 4013." They also claimed, in their second amended cross-complaint, that at all times prior to purchasing the subject property the Mikelses were aware of these facts, including the terms of the Desimone Agreement. The Desimone Agreement, which was attached as exhibit "B" to the Kings' cross-complaint does not indicate that it was ever recorded, nor did the Kings allege that it had been recorded.

The Kings filed a notice of pending action about two months after filing their second amended cross-complaint.

The Mikelses answered the cross-complaint and also cross-complained against John Rager, Dr. Patsy Desimone (Dr. Desimone) and the Kings for quiet title, fraud via intentional failure to disclose material fact concerning real property, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, breach of contract and attorney fees.

The Kings moved for summary judgment on the "action," which we assume means on the combined issues raised by the Mikelses' complaint, the Kings' second amended cross-complaint, and the Mikelses' cross-complaint, to the extent the Mikelses' cross-complaint contained a cause of action related to the existence or nonexistence of an interest in real property, i.e., the first cause of action for quiet title. The Kings also moved for judgment on the pleadings regarding the Mikelses' cross-complaint against Rager, the Desimones, and the Kings as to the Mikelses' second and third causes of action for intentional failure to disclose a material fact and negligent misrepresentation.

The Kings' motion for summary judgment was based on eight facts which they alleged to be undisputed and which facts are set forth in detail in the discussion section related to the motion for summary judgment. The facts fall into two categories: those which the Kings used to support an argument that the city's acceptance of the offer of dedication, as shown in Parcel Map No. 4013, subject to improvements of the roadway, created a public easement, and those which the Kings used to support an argument that by referencing Parcel Map No. 4013 in their deed to the Desimones, which map showed Almond Street, they had created a private appurtenant easement over Parcel No. 1 in favor of the remainder parcel.

The Mikelses opposed the Kings' motion for summary judgment. Specifically, they contended that the acceptance of the offer of dedication subject to improvements did not create, as a matter of law, a public easement, and that the undisputed facts of the instant case did not come within the doctrine of the creation of implied easements by reference to a subdivision map.

The trial court concluded that the Kings had both a private appurtenant easement across the property as owners of the "remainder parcel," and the right to use a public easement across the property as members of the public. It therefore granted the Kings summary judgment as to the existence of both types of easement, and as to their right to quiet title to the private easement.[1]

---

[1] Although the Kings did not make a motion for summary judgment on their cross-complaint for quiet title as to the easement, the trial court entered judgment for them on that cause of action when it entered summary judgment in their favor on the Mikelses' complaint, alleging that such easements did not exist.

In response to the Kings' motion for judgment on the pleadings as to the Mikelses' cross-complaint, it granted, with leave to amend, the motion as to the second cause of action for fraud and deceit by concealment and failure to disclose, and as to the third cause of action for fraud and deceit based on negligent misrepresentation.

The Mikelses failed to amend their cross-complaint, and an order was entered dismissing the second and third causes of action. The summary judgment disposed of the first cause of action in the Kings' cross-complaint and the first cause of action in the Mikelses' cross-complaint (both for quiet title). The fourth and fifth causes of action in the Mikelses' cross-complaint for breach of an implied covenant and breach of the real property purchase contract being stated against Dr. Desimone, and not the Kings, the sixth cause of action being "for attorney fees" based on the Mikelses' contract with Dr. Desimone, and the first cause of action of the Mikelses' complaint for trespass were resolved by the final judgment's language: "Plaintiffs and Cross-Complainants, Jon Mikels and Marjorie Mikels, take nothing by way of this Complaint and Cross-Complaint." Consequently, the final judgment concluded all causes of action between the Mikelses and the Kings.

## II

### Issues on Appeal

The Mikelses have appealed from that judgment, and contend that it must be reversed for the following reasons:

(1) mere recording of a parcel map and conveying a parcel by reference to the parcel map on which an offer of dedication and acceptance "subject to improvements" is depicted cannot create a public or private easement in the absence of either the unconditional acceptance of the offer of dedication by the appropriate governmental entity after the improvements are completed, or proof of public use of the offered easement in the manner for which the dedication was made;

(2) mere filing of a map containing an "offer of dedication" and acceptance of the offer subject to improvements, creates no rights in the "public," or in the Kings, until such time as the improvements are made and the city accepts the property into its road system; such offer remains subject to termination under the clear provisions of Code of Civil Procedure section 771.010;

(3) the Kings failed to show "legal title" necessary to meet the statutory requirements of a "quiet title action";

(4) the Kings failed to show clear and convincing evidence necessary to overcome certain Evidence Code presumptions;

(5) the Kings' claims cannot withstand the equitable defenses of laches and unclean hands;

(6) the Kings failed to prove "irreparable damage," or "wrongful conduct" necessary to establish a claim for injunction;

(7) the judgment failed to specify the purpose, use and extent of the easement, and failed to allocate liabilities between the parties;

(8) the trial court failed to consider important constitutional issues and public policies in making its determination to give the Kings an easement;

(9) the trial court erred by concluding that the Mikelses' cross-complaint failed to state sufficient facts to constitute causes of action against John Rager and the Desimones; and

(10) disputed issues of fact remain to be determined at trial.

We conclude, as to the judgment on the Mikelses' complaint and the Kings' cross-complaint, that the judgment must be reversed because (1) the Kings failed to establish that a public easement was created as a matter of law by the offer on Parcel Map No. 4013 to dedicate an easement which was conditionally accepted by the City of Rancho Cucamonga; and (2) the Kings failed to establish sufficient undisputed facts to show that a private appurtenant easement by implication existed in their favor over the Mikelses' property.

Respecting the Mikelses' cross-complaint, we conclude that the Kings' motion for judgment on the pleadings should not have been granted as to the Mikelses' second cause of action for intentional failure to disclose against John Rager, and as to their third cause of action for negligent misrepresentation against the Kings (including Rager).

## III

### FACTS

By a deed recorded on December 12, 1952, John Ingalls, Ruth Lewis Ingalls Brown and John Lewis King granted to John Lewis King and

Gertrude King title to "Lot 3, Block 13, Map of the Tract of Land of Cucamonga Homestead Association, as per plat recorded in Book 6 of Maps, page 46, records of said County, and of Government Lots 1 and 2 of Section 21, [etc., as described by metes and bounds]" and to "Lot 9, Block 17, Map of the Tract of Land of Cucamonga Homestead Association, as per plat recorded in Book 6 of Maps, page 46, records of said County." The Map of the Tract of Land of the Cucamonga Homestead Association, attached hereto as appendix A, and attached to the Kings' moving papers as exhibit "B," shows the tract's "subdivision into 20 acre tracts, and building lots," and notes that "[t]he Streets running North and South between the building lots are 80 ft. wide[,] Orange Street is 48 ft.[,] Almond Street is 33 ft. and all the other Streets are 66 feet wide."

Lot 3, Block 13 and Lot 9, Block 17, are bordered to the north by Almond Street. Government Lots 1 and 2 of section 21 both lie to the north of Almond Street, and apparently were not part of the subdivision in which Lot 3 and Lot 9 were located. (See appen. A.)

By a deed recorded on December 30, 1977, Gertrude King Hartmann, who acquired title as Gertrude King, and Gertrude King Hartmann, Jennifer Rager and Stanley Mussell, Jr., as Trustees under the will of John Lewis King, Deceased, granted to Dr. Patsy and Betsy S. Desimone (the Desimones) "Parcel No. 1 of Parcel Map No. 4013, in the County of San Bernardino, State of California, as per map thereof recorded in Book 37 of Parcel Maps, Pages 32 & 33, records of said County." The grant deed stated that it was subject to "Covenants, conditions, restrictions, reservations, rights, rights of way and easements of record."

Parcel Map No. 4013, to which the grant deed referred, showed that this grant concerned the division into Parcel No. 1 and a remainder parcel of Government Lot 2 of Section 21, which, as noted earlier, lies north of Almond Street and was not part of the subdivision bounded to the north by Almond.

Parcel No. 1, deeded to the Desimones, is carved out of the Kings' remaining property (the remainder parcel) like the door in a child's drawing of a house. (See appen. B.) Parcel No. 1 is bordered on the south by Almond Street. On Parcel Map No. 4013, Parcel No. 1 is outlined by a solid line drawn so as to indicate that the Parcel includes the entire width of that street, which is described as "vacated Almond St. per 3648 [undecipherable] O R." (See appen. B.) This reference was to a resolution of the Board of Supervisors of San Bernardino County, which states that upon petition of certain freeholders, "Almond Street from its intersection with Beryl Avenue westerly to a point 600 feet west of its intersection with Carnelian Avenue" "is

hereby vacated, discontinued and abandoned as unnecessary for present or prospective use," and that "the public easement heretofore existing shall hereinafter cease and determine, and the title to the land previously subject thereto shall revert to the respective owners thereof, free from such public easement; . . ." Beryl Avenue's location can be ascertained by reference to appendix A; it lies to the east of Carnelian. The vacation of the public easement by resolution thus covers Almond Street to a width of 33 feet, which is south of the Kings' remainder parcel and to the south of Parcel No. 1 in its entirety. (See appen. B.)

The width of Almond is shown on Parcel Map No. 4013 as being 66 feet wide to the west of Carnelian, but only 33 feet wide from east of Carnelian to the edge of property depicted on the map. As noted above, The Map of the Tract of Land of Cucamonga Homestead Association showed Almond as a 33 feet wide street. The 66 feet wide designation to the west of Carnelian is apparently due to the Kings' offer of dedication in connection with the filing of Parcel Map No. 4013: sheet one of Parcel Map No. 4013 contains an owner's certificate, signed by the Kings, stating "we hereby offer to dedicate to the City of Rancho Cucamonga for public use Almond Avenue [sic] . . . ." and the notes on the map itself show an offer of dedication over the street's 66-foot width. (See appen. B.) The county surveyor's approval and acceptance certificate, also found on sheet one, states that the surveyor, on behalf of the city council of Rancho Cucamonga, "hereby approves the annexed map and accepts, subject to their improvement in accordance with the county standards, the foregoing offers of dedication as shown on the annexed map."

Sometime after the Kings-to-Desimones conveyance of Parcel No. 1, Parcel No. 1 was transferred to Richwood Development Company, Inc., which in turn, by corporation grant deed recorded February 22, 1985, transferred to the Mikelses "Parcel No. 1 of Parcel Map No. 4013, as per map thereof recorded in Book 37 of Parcel Maps, pages 32 and 33, records of said county."

After the Mikelses took title to Parcel No. 1, the Kings allegedly broke the lock and sawed off the chain securing a gate across the claimed easement, and also graded a lane across that area, so that customers could cross the Mikelses' land to reach the Kings' Christmas tree farm.

As a result of this incident, the above-described litigation ensued, culminating in the Kings' motion for summary judgment and their motion for judgment on the pleadings. This in turn resulted in the final judgment and order of dismissal.

The Kings' motion for summary judgment was based on the following facts which they alleged to be undisputed:

(1) "Parcel Map No. 4013 was signed by the owners of the land depicted thereon and recorded on December 29, 1977, (see Exhibit 'M')."

(2) "Almond Avenue[*sic*] was dedicated to the City of Rancho Cucamonga for public use pursuant to Parcel Map No. 4013, (see Exhibit 'M')."

(3) "The dedication of Almond Avenue[*sic*] was accepted subject to improvement by a duly authorized officer on behalf of the City of Rancho Cucamonga, (see Exhibit 'M')."

(4) "Parcel Map No. 4013 exhibits Almond Street as a sixty-six foot, east-west roadway, running along the southerly border of Parcel One, (see Exhibit 'M')."

(5) "Parcel One was conveyed by a deed, recorded on December 30, 1977, which described the conveyance by reference to Parcel Map No. 4013, (see Exhibit 'M')."

(6) "Since Parcel Map No. 4013 was filed and recorded, on December 29, 1977, no deed in either the MIKELS' or the KINGS' chain of title specifically excepts appurtenant easements over Almond Street, or Avenue, (see Exhibits, 'O', 'Q', 'R', and 'T')."

(7) "Parcel Map No. 5671, being a division of the Remainder Parcel of Parcel Map No. 4013, was filed and recorded on March 14, 1980, (see Exhibit 'P')."

(8) "KINGS are owners of land depicted on Parcel Map No. 4013, (see Exhibits 'A', 'K' and 'T')."

The Kings relied on the cases of *Danielson* v. *Sykes* (1910) 157 Cal. 686 [109 P. 87] and *Tract Development Services, Inc.* v. *Kepler* (1988) 199 Cal.App.3d 1374 [246 Cal.Rptr. 469] for the proposition that "once a portion of the property depicted on a map is conveyed by deed, described by reference to the map, private easements arise appurtenant to the property depicted on the map over the roadways indicated thereon." They argued: "Therefore, when Parcel One was conveyed to the Desimones by deed, recorded December 30, 1977, referencing Parcel Map No. 4013, a private easement over Almond Street attached to each lot on the map, as an appurtenance. Thus, Desimones, as owners of Parcel One, had an appurtenant easement over that portion of Almond Street running along the southerly border of the Remainder Parcel of Parcel Map No. 4013. And, KINGS, as

owner of the Remainder Parcel, retained an interest constituting an appurtenant easement over that portion of Almond Street on the southerly border of Parcel No. One."

The Mikelses opposed the Kings' motion for summary judgment. Specifically, they responded to the Kings' statement of undisputed facts as follows:

(1) "No dispute; Parcel Map No. 4013 speaks for itself. . ."

(2) "DISPUTE; *Almond Avenue*[sic] *has not, since it was vacated in 1955, been dedicated*; as seen clearly on the Parcel Map, there is an *offer* of dedication *only* on the property and Defendants have failed to produce any resolution of the City of Rancho Cucamonga accepting Almond into its system of streets and roads. Further, the offer is 'subject to improvements in accordance with the county standards.' No such improvements were ever made. There has thus been *no* dedication. (Defendants' Exhibit 'M'.)"

(3) "DISPUTE; again Defendants misstate the clear language on the map. The *offer* of dedication (not dedication) was accepted—subject to improvements. (Defendants' Exhibit 'M'.)"

(4) "DISPUTE; Parcel Map No. 4013 shows a 66-foot wide *offer of dedication*; the only actual 'street' shown is 33-foot wide 'VACATED ALMOND STREET,' per 3648 official records. That official record is the San Bernardino County Board of Supervisors' May 18, 1955, resolution *vacating* Almond Street wherein the Board 'vacated, discontinued and abandoned' the road (at the request of defendants) from Beryl Avenue westerly to a point 600 feet west of Carnelian (all the subject property) and further ordered:

" 'that the public easement heretofore existing shall hereinafter cease and determine, and the title to the land previously subject thereto shall revert to the respective owners thereof, free from such public easement . . . .' (Defendants' Exhibits 'M' and 'C'.)"

(5) "Undisputed, except that this fact is demonstrated not in Exhibit 'M' as alleged by Defendants but in their Exhibit 'O'."

(6) "CLARIFICATION AND OBJECTION; while this assertion of fact may be true, objections are made on the grounds of relevance. The only property in dispute or relevant to this lawsuit is *PARCEL No. 1* of PARCEL MAP 4013. Defendants have no easements shown on Parcel Map No. 4013 in their favor.

The only easements are for utilities and drainage as are clearly depicted on Exhibit 'M'. Exhibit 'T' is immaterial and has no relevance to these proceedings whatsoever. It is a conveyance of an interest in Parcel Map 5671, which includes none of Parcel 1 of Parcel Map No. 4013. This map is attached as Exhibit 'P' of Defendants' papers. As can be seen on that map, Parcel 1 of Parcel Map 4013 is 'N.A.P.' i.e., a 'non-affected parcel.' At the time Parcel Map 5671 was recorded (1980), Parcel 1 of Parcel Map 4013 was already conveyed to a third party. Parcel Map 5671 (Defendants' Exhibit 'P' and Exhibit 'T') has nothing to do with plaintiff Mikels' claim of title."

(7) "No dispute; the document speaks for itself but *objection* on the grounds of relevance. At the time this Map No. 5671 was recorded (i.e., 1980), Parcel No. 1 of Parcel Map No. 4013 was already sold to the Desimones. (See Defendants' Exhibit 'O' showing transfer in December 1977.) No where [*sic*] on Parcel Map No. 5671 can be found the signatures of Dr. and Mrs. Desimone (Exhibit 'P'). Without the owner's signature and approval, nothing on Parcel Map No. 5671, filed after the Desimones acquired title, could affect the rights or title of Desimones from whom Mikelses acquired their title. Parcel Map No. 3671 [*sic*] is irrelevant to these proceedings."

(8) "DISPUTE; the Kings are the owners of *only* the portion of land on Parcel Map No. 4013 directly north and west of Parcel No. 1. Objections are made to the reference to *Exhibit 'A'*. Exhibit 'A' conveys no land whatsoever included in Parcel Map No. 4013, as can be clearly seen in Exhibit 'B', the map to which Exhibit 'A' refers. All of the land shown in that subdivision map lies south of the subject property. Exhibit 'A' conveyed only two small parcels, i.e., Lot 3 of Block 13 and Lot 9 of Block 17, to the Kings, neither of which have relevance to Plaintiffs' land which is north of Almond and is not even shown on this Exhibit 'B' subdivision map.

"Plaintiffs believe this Exhibit is included for the sole purpose of deceiving the court since it shows 'Almond Street' at the northern limits. But this map was recorded in 1885 and, as can be seen in Defendants' Exhibit 'C', [Almond] was *vacated* by Defendants' own request in 1955."

The Mikelses, in addition to responding to the Kings' separate statement of undisputed facts as set out above, also listed three separate facts in opposition to the Kings' motion for summary judgment and summary adjudication:

(1) "As a *condition* of approval of Parcel Map No. 4013, the county required a private road easement to be recorded for ingress and egress along

the 66 feet on the south property line of Parcel Map No. 4013. The county specifically said:

" 'All private easements are to be recorded by separate instrument. If this cannot be accomplished by the time final approval is granted, the private easements as shown on the approved land division map *must* be recorded at the time of transfer of title to the property.' (Emphasis added; see Plaintiffs' Exhibit '1' attached hereto and incorporated herein by reference.)

"As can be seen by Defendants' Exhibit 'O', the Deed to the Desimones *failed* to reserve a private easement to the Kings or anyone else. The conveyance was subject to only easements *of record*. The court's attention is drawn to Parcel Map No. 4013 (Defendants' Exhibit 'M'), where no 'private easement' is depicted. And the court is requested to note the absence in this court record of any 'separate instrument' giving or reserving to the Kings an easement."

(2) "The disputed lane on the Mikels' property has *never* been improved to county or city standards (see photos attached to initial papers and declarations filed by Plaintiffs in October 1986 depicting the rutted, weed-filled, gated dirt lane)."

(3) "The disputed lane has never been open to the public but has remained gated and locked since long before Mikels acquired the property. ▮▮▮▮ ▮▮▮ (See Declaration of Jon D. Mikels dated October 9, 1986, attached hereto as Plaintiffs' Exhibit '2'.)"[2]

The Kings replied to the Mikelses' opposition, and responded to the Mikelses' separate statement of the three undisputed facts noted above, generally commenting that such facts were irrelevant. The Mikelses then filed a "rebuttal" to the Kings' reply and an "Additional Statements of Undisputed Facts . . . ." These additional facts are set out in the following paragraph. The Kings then filed further documents but did not, however, contend that the "additional" undisputed facts asserted by the Mikelses were, in fact, disputed.

The "additional" undisputed facts asserted by the Mikelses were that:

---

[2]The Mikelses also made evidentiary objections based on relevance and immateriality to numerous exhibits attached to the Kings' moving papers, but these objections were never ruled upon by the court. (The Kings also, in their reply to the Mikelses' opposition, made evidentiary objections which were never ruled upon.) Normally it is up to the objecting party to obtain a ruling on such objections, and if they fail to do so, the objection will be deemed to have been waived. (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 2030, pp. 1192-1193 and cases cited therein.)

(1) After Parcel Map No. 4013 was filed, no recorded document of any kind has granted or reserved an easement over the disputed way in favor of the Kings or the public;

(2) After the offer of dedication was depicted on the filed parcel map, neither the city nor county has accepted by resolution the disputed way into its system of streets;

(3) Parcel Map 4013 is not a subdivision map but is merely a parcel map dividing certain property into the two parcels, Parcel No. 1 and the remainder parcel, each of which has its own separate access to city streets, without the use of Almond;

(4) "The easement KINGS conveyed to Acro in the 1950's and thereafter given to the Bella Vista property owners (all south of the subject property) seen on KINGS' exhibits D, E, F, G, H, I and J contain *only* an easement on vacated Almond for *restricted* purposes, i.e., 'for purpose of constructing, laying, operating, and maintaining and repairing water lines to provide water service *to said Lot 9*, Block 17, and ingress and egress from said Lot 9.' *The Kings own no property in Lot 9*. None of the easements were for 'road' purposes *in contrast* to the clear *road easements* granted to those same property owners in a paved street that runs through that subdivision commonly known as Bella Vista (described on the deeds as the north 60 feet of the south 298.64 feet of the east 826.88 feet of said Lot 9, et. seq.) If Almond was to be a *road* the deeds would have said so as they clearly did for Bella Vista Street."

As noted above, the trial court, by granting Kings' motion for summary judgment, has determined that there was a public easement and a private appurtenant easement in favor of the Kings over the Mikelses' property, and that therefore the quiet title, declaratory relief, injunction and trespass issues raised by the complaint and the Kings' and Mikelses' cross-complaints were resolved. Accordingly, a final judgment was entered stating that a public easement was created, and presently exists, over the Mikelses' property within the 66 foot-wide Almond Street, "offered for dedication and accepted subject to improvement"; and that a private appurtenant easement, also 66 feet wide, existed over the property in favor of Jeffrey King, Jennifer Rager, Gertrude Hartmann, and the John Lewis King Trust for roadway purposes.

## IV

### DISCUSSION

#### A. *The Motion for Summary Judgment*

##### 1. *The Public Easement*

To be entitled to a summary judgment that the Mikelses' property was subject to an easement in favor of the general public, including the Kings, the Kings were required to establish on their cross-complaint undisputed facts sufficient to establish as a matter of law each element necessary for the existence of such an easement. To preclude the granting of such a judgment, the Mikelses needed only to show that the Kings failed to establish that there were no triable issues of material fact as to any one element. In other words, to defeat the Kings' motion for summary judgment, the Mikelses needed only to show that the Kings' evidence in support of any one element was contradicted by other competent evidence, and that therefore there was a factual dispute as to such element.

The Kings' claim to a public easement was based on the following allegedly undisputed facts:

(1) "Parcel Map No. 4013 was signed by the owners of the land depicted thereon and recorded on December 29, 1977, (see Exhibit 'M')."

(2) "Almond Avenue[*sic*] was dedicated to the City of Rancho Cucamonga for public use pursuant to Parcel Map No. 4013, (see Exhibit 'M')."

(3) "The dedication of Almond Avenue[*sic*] was accepted subject to improvement by a duly authorized officer on behalf of the City of Rancho Cucamonga, (see Exhibit 'M')."

The Kings assert that the "dedication" of Almond Street, pursuant to Parcel Map No. 4013, and the acceptance of that dedication "subject to their improvement in accordance with the county standards," created a public easement over Almond Street. According to the Kings, because Government Code section 66477.3 provides that the acceptance of an offer of dedication on a final map is effective when the map is filed in the office of the county recorder or when a resolution of acceptance by the appropriate legislative body is filed in such office, the offer of dedication contained in Parcel Map No. 4013 and its acceptance subject to improvements became effective and complete, and not subject to termination or abandonment, on December 29, 1977 when Map No. 4013 was filed and recorded.

They further contend that because a property interest in dedicated property passes upon recordation of the final map (despite the fact that the governing authority does not become responsible for maintenance of the dedicated streets until they have been improved by the subdivider and accepted into the street system by such authority) such property "has become a public roadway" upon such dedication and a property interest inures to the public. The Kings apparently conclude from these contentions and the asserted undisputed facts that a public roadway easement exists on Mikelses' property and is presently available for use by any member of the public, including them. They cite no direct authority for this particular proposition but quote 61 Ops.Cal.Atty.Gen. 467-469 (1978), which states "The significance of accepting an offer of dedication is that the property is thereafter held in trust for public use; the property is no longer subject to private control. [Citation.] It does not follow, however, that property open to public use must be maintained by the governing body that accepted the offer of public dedication. . . ."

The Mikelses responded to the above-noted portions of the Kings' statement of undisputed facts as follows:

(1) "No dispute; Parcel Map No. 4013 speaks for itself. . . ."

(2) "DISPUTE; *Almond Avenue has not, since it was vacated in 1955, been dedicated*; as seen clearly on the Parcel Map, there is an *offer* of dedication *only* on the property and Defendants have failed to produce any resolution of the City of Rancho Cucamonga accepting Almond into its system of streets and roads. Further, the offer is 'subject to improvements in accordance with the county standards.' No such improvements were ever made. There has thus been *no* dedication. (Defendants' Exhibit 'M'.)"

(3) "DISPUTE; again Defendants misstate the clear language on the map. The *offer* of dedication (not dedication) was accepted—subject to improvements. (Defendants' Exhibit 'M'.)"

It is apparent that the parties do not disagree as to the language contained in Parcel Map No. 4013 related to the offer of dedication and the city's acceptance thereof. They simply disagree as to the effect of the language. Thus, the issue presented by this portion of the motion for summary judgment is not one of fact. Rather, it is a question of law, i.e., does an offer of dedication of a roadway easement followed by the public entity's acceptance of it have the legal effect of creating a pubic roadway easement? Helpful in this analysis are references to pertinent provisions of the Subdivision Map Act. (Gov. Code, § 66410 et seq.)

A governing authority may, at the time it approves a parcel map, "accept, accept subject to improvement, or reject any offer of dedication." (Gov. Code, §§ 66477.1, subd. (a), 66463.) Offers of dedication for streets which are imposed by local ordinance are irrevocable. (Gov. Code, § 66475.) Any road "for which an offer of dedication has been accepted or accepted subject to improvements" "*may* [be] accept[ed] into the county road system, pursuant to Section 941 of the Streets and Highways Code, . . ." (Gov. Code, § 66477.1, subd. (b), italics added.)

■■ The Kings contend that the property in question is now subject to a "public" road easement because the offer of dedication was "accepted." They claim it must be opened to the public even though it has not been accepted into the public road system. We disagree, not because we believe acceptance into the public road system is dispositive, but because the city's qualified acceptance of the offer of dedication did not result in a completed dedication of a public easement.

■■■■■■ In reaching this conclusion, we apply basic principles of contract law.[3] A valid acceptance of an offer must be absolute and

---

[3]We see no reason that general contract law principles should not apply to statutory offers of dedication and acceptances thereof.

" 'The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations].' [Citations.] In determining such intent, the court must first look to the words of the statute." (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].) The Subdivision Map Act (Gov. Code, § 66410 et seq.) uses the language of basic contract law: "offer," "accept," "accept subject to [conditions]," "reject," "termination," "abandonment," etc.

Of course, if application of general principles of contract law conflicts with the statutory scheme or defeats its purpose, such principles should not be applied. (*T.M. Cobb Co., supra,* 36 Cal.3d at p. 280.) The purpose of the Subdivision Map Act is to give the legislative bodies of local agencies the power to regulate and control the design and improvement of subdivisions (Gov. Code, § 66411), with consideration for, among other matters, the location and size of required easements and rights of way for access for the use of the lot owners and local neighborhood traffic (Gov. Code, §§ 66418, 66419) and the design of street alignments, grades and widths. (Gov. Code, § 66418.) This purpose is not defeated, and in fact is best effectuated, by applying basic contract principles to the interpretation of Government Code section 66477.1, which results in a judicial holding that a local agency has not agreed that title to a proposed easement for a public right of way shall pass to the public until the the required improvements have been made to the satisfaction of the agency.

In their petition for rehearing, the Kings cite *Tischauser* v. *City of Newport Beach* (1964) 225 Cal.App.2d 138 [37 Cal.Rptr. 141] for the proposition that, as to statutory dedications (contrasted to common law dedications), "Dedication is not governed by the ordinary rules applicable to the law of contracts." (*Id.* at p. 143.) We think this bold statement, which has never been cited in subsequent published opinions, is too broad, because the court in *Tischauser* was not presented with any issue which required resolution of the question as to whether the rules of the law of contracts can ever apply to statutory offers and acceptances of dedication. Instead, the issue before that court was simply whether, when the Orange County Board of Supervisors approved and accepted a subdivision map " 'as the official plotting of

unqualified in order to create a binding contract. (Civ. Code, § 1585; *Converse* v. *Fong* (1984) 159 Cal.App.3d 86, 91 [205 Cal.Rptr. 242].) While normally a qualified acceptance constitutes a rejection which terminates the offer (*ibid.*), this rule may be modified by statute. (See, e.g., Cal. U. Com. Code, § 2207.) ▮ The Subdivision Map Act (Gov. Code, § 66410 et seq.) specifically modifies this particular principle by making offers to dedicate real property for public easements in connection with the filing of parcel and subdivision maps irrevocable and/or terminable by following a statutory procedure, or abandoned only after a given period of time has passed. (Gov. Code, §§ 66475, 66477.2, 66463.)

Thus, under basic principles of contract law, an offer of dedication which is accepted on the condition that the proffered property be improved does not result in a completed dedication, no more than does a conditional acceptance of an offer create a valid contract. A public entity's interest in streets and easements offered by dedication is necessarily limited by the conditional nature of its acceptance thereof, which depends for finality upon a subsequent acceptance after satisfactory completion of the street improvements. (*County of Yuba* v. *Central Valley Nat. Bank, Inc.* (1971) 20 Cal.App.3d 109, 113 [97 Cal.Rptr. 369].) A qualified acceptance results in an outstanding offer of dedication, which has not been revoked by operation of law and which the public entity may accept upon its conditions of acceptance being met. Until the offer of dedication is unconditionally accepted, no public interest is created.

▮ Based on the foregoing, we conclude that the trial court erred by granting the Kings' motion for summary judgment based on its adjudication that as a matter of law a public roadway easement exists on the Mikelses' property. The judgment based thereon must be reversed.

2. *The Private Appurtenant Easement by Implication*

Before we review the correctness of the trial court's granting of the Kings' motion for summary judgment as to the existence of a private appurtenant

---

said tract but not as regards county roads,' " the board thereby " 'did not accept' " the offer of dedication of the roads, thus terminating the offer of dedication. (*Id.* at pp. 142-143.)

Notably, in concluding that the board's action did not terminate the offer, the reviewing court did not rely on statutory provisions related to the termination or withdrawals of offers of dedication, but instead (1) interpreted the board's words as not constituting a rejection of the offer of dedication (225 Cal.App.2d. at p. 144), and (2) considered the parties' behavior which occurred before the plaintiff decided to assert that the streets were not public property. (*Id.* at pp. 141-142, 144-145.) The court's interpretation of the language said to constitute rejection or acceptance of an offer and its consideration of the parties' course of conduct under an agreement before a dispute arises as to the agreement's existence or terms, involved applications of the rules of contract law. Thus, although the court in *Tischauser* commented that such rules do not govern the law of dedication, it nevertheless implicitly applied such rules in arriving at its decision.

easement in their favor, we must first discuss a discrepancy between the Kings' theory below as to how such an easement was created and their theory on appeal.

The Kings' second amended cross-complaint specifically alleged, in the first cause of action, that:

"18 A. [The Kings] contend that they have a right of use of the Disputed Roadway either because (1) the Disputed Roadway was not conveyed to the Desimones as part of Parcel 1, or (2) even if it was conveyed, the Disputed Roadway is an easement *by implication* in favor of [the Kings], and those permitted to use the easement by them, or (3), the Disputed Roadway is a public road, available to use by all as a result of the offer of dedication as contained on Parcel Map No. 4013." (Italics added.)

The second cause of action in their cross-complaint specifically alleged:

"21. By virtue of the Desimone Agreement, the requirements of the County of San Bernardino for approval of Parcel Map No. 4013 and the actual use of the Disputed Roadway by [the Kings] and those other persons given permission for use by [the Kings] are entitled to, and are the owners of legal title to, an easement *by implication* across the entirety of the Disputed Roadway . . ." (Italics added.)

The only type of easement prayed for by the Kings was an easement *"by implication."*

In their motion for summary judgment, although they did not specifically argue that they were entitled to an easement by implication, the cases they cited, e.g., *Danielson, Petitpierre*, and *Tract Development Services, Inc.*, and the thrust of their arguments, all presupposed that they were in fact, as indicated by their cross-complaint, seeking to establish that their private easement was one created by implication.

However, on appeal, in response to the Mikelses' appellate arguments related to this theory, the Kings now contend that the trial court found an easement "created by grant" rather than an implied easement, and that therefore the Mikelses' authorities related to implied easements are inapplicable to their "easement created by grant."

The basic problem with this new-adopted position is that it assumes that an "easement created by grant" and an implied easement are entirely separate subsets within the set of easements. This is not the case. Easements may be created by grant or by prescription. (*Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 30 [109 P.2d 329].) The set of easements

created by grant fall into two subsets: easements created by express grant, and easements created by implied grant. (*Ibid.*) In other words, "an easement created by grant" must be either express or implied. The Kings' "easement created by grant," therefore, must be either express or implied. The Kings do not argue that they have an easement created by an express grant, undoubtedly because there is nothing in the record thus far which remotely resembles an express grant. Thus, they are left, by default, with the implicit argument, which they expressly disclaim, that the easement in question is an easement by implication.

Because of the confusion created by this disclaimer, or perhaps in spite of it, we do not believe we can reverse the judgment simply on the basis that the Kings now have given up their right to an easement by implication, the only kind of private easement to which they would be entitled, given the state of their pleadings. (*Dorado* v. *Knudsen Corp.* (1980) 103 Cal. App.3d 605, 611 [163 Cal.Rptr. 477] (a motion for summary judgment must be directed at the theory of recovery as it is pleaded).) We therefore review the record below to determine whether the trial court properly granted the Kings' motion for summary judgment as to their right to a private appurtenant easement by implication.

■ To be entitled to a summary judgment that they were the owners of a private appurtenant easement by implication, the Kings were required to establish on their cross-complaint undisputed facts sufficient to establish as a matter of law each element necessary for the existence of such an easement. To preclude the granting of such a judgment, the Mikelses needed only to show that the Kings failed to establish that there were no triable issues of material fact as to any one element. In other words, to defeat the Kings' motion for summary judgment, the Mikelses needed only to show that the Kings' competent evidence in support of any one element was contradicted by other competent evidence, and, therefore, that there was a factual dispute as to such element.

The Kings alleged as undisputed facts the following matters which, in their opinion, were relevant to the creation of an easement by implication:

(4) "Parcel Map No. 4013 exhibits Almond Street as a sixty-six foot, east-west roadway, running along the southerly border of Parcel One, (see Exhibit 'M')."

(5) "Parcel One was conveyed by a deed, recorded on December 30, 1977, which described the conveyance by reference to Parcel Map No. 4013, (see Exhibit 'M')."

(6) "Since Parcel Map No. 4013 was filed and recorded, on December 29, 1977, no deed in either the MIKELS' or the KINGS' chain of title specifically excepts appurtenant easements over Almond Street, or Avenue, (see Exhibits, 'O', 'Q', 'R', and 'T')."

(7) "Parcel Map No. 5671, being a division of the Remainder Parcel of Parcel Map No. 4013, was filed and recorded on March 14, 1980, (see Exhibit 'P')."

(8) "KINGS are owners of land depicted on Parcel Map No. 4013, (see Exhibits 'A', 'K' and 'T')."

 We need not consider whether the Mikelses' opposition and response to the above-noted separate statement of facts created a triable issue of fact as to the existence of an easement by implication, if we determine that the facts as set forth by the Kings (and assumed to be undisputed) are not sufficient to establish the existence of such an easement as a matter of law. (*LaRosa* v. *Superior Court* (1981) 122 Cal.App.3d 741, 744-745 [176 Cal.Rptr. 224].) They are not.

 An implied easement may arise when, under certain specific circumstances, the law implies an intent on the part of the parties to a property transaction to create or transfer an easement even though there is no written document indicating such an intent. (Miller & Starr, Cal. Real Estate (2d ed. 1989) § 15:19, pp. 448-450.) An implied easement may be created under several different factual scenarios (see, e.g., Miller & Starr, *supra*, §§ 15:20, 15:21, 15:24, 15:25, pp. 450-456, 460-462), but in all cases requires the existence of three elements:

" '(1) A separation of title;

" '(2) [B]efore the separation takes place the use which gives rise to the easement shall have been so long continued and so obvious as to show that it was intended to be permanent; and

" '(3) [T]he easement shall be reasonably necessary to the beneficial enjoyment of the land granted.' " (*Leonard* v. *Haydon* (1980) 110 Cal.App.3d 263, 266 [167 Cal.Rptr. 789], quoting *Fischer* v. *Hendler* (1942) 49 Cal.App.2d 319, 322 [121 P.2d 792].)

The particular factual scenario relied upon by the Kings as establishing an implied easement is that of a sale by reference to a map. As stated in *Danielson* v. *Sykes, supra,* 157 Cal. 686, 690:

 "When a lot conveyed by a deed is described by reference to a map, such map becomes a part of the deed. If the map exhibits streets and alleys it necessarily implies or expresses a design that such passageway shall be used in connection with the lots and for the convenience of the owners in going from each lot to any and all the other lots in the tract so laid off. The making and filing of such a plat duly signed and acknowledged by the owner . . . is equivalent to a declaration that such right is attached to each lot as an appurtenance. A subsequent deed for one of the lots, referring to the map for the description, carries such appurtenance as incident to the lot."

This scenario fulfills the three elements required for an implied easement to arise in that (1) when the owner of the property being subdivided draws up a map dividing the property into lots divided and encumbered by roads, and then sells lots with reference to such map, the roadways are obvious (on the map) and by their very nature and the fact of the sales of lots clearly intended to be permanent, (2) the sale of lots creates the necessary separation of title, and (3) the easements are reasonably necessary to the lot owners' beneficial enjoyment of their land, in that they enable the owners to move freely among and between the various lots within the subdivision as well as onto the adjoining city streets.

 The Kings apparently believe that this method of creating and easement by implication applies to their recordation of Parcel Map No. 4013. However, all the cases in which an implied easement appurtenant was found to exist based on reference to a map involved the drawing up, by the unsubdivided property's original owner, of a subdivision tract map, with a network of roads as part of the map, and the subsequent reference to the map, and hence to such newly created and depicted roadways, in the deeds *by the owner*, as *grantor*, to the purchasers of the lots as grantees. (See, e.g., *Danielson* v. *Sykes, supra,* 157 Cal. 686; *Petitpierre* v. *Maguire* (1909) 155 Cal. 242 [100 P. 690]; *Tract Development Services, Inc.* v. *Kepler, supra,* 199 Cal.App.3d 1374; *Norcross* v. *Adams* (1968) 263 Cal.App.2d 362 [69 Cal.Rptr. 429].)

 This distinction is determinative because the reference-to-a-map method of creating an easement by implication presupposes two things:

First, it "presupposes ownership of the street [in question] by the one who recorded the tract map. [Citations.] Where the abutting street is not a part of the recorded subdivision, the doctrine of implied grant can have no application. [Citations.]" (*Norcross* v. *Adams, supra,* 263 Cal.App.2d 362, 365; see also *Petitpierre* v. *Maguire, supra,* 155 Cal. 242: "The general rule . . . 'rests upon the fact that the grantor, by describing the land as bounded by a way,

*when he is the owner of the soil under the way*, intends thereby to confer upon the grantee, as appurtenant to the granted premises, the right to use such way, . . .'" (*Id.* at p. 248, italics added.) Thus, in *Norcross*, when the evidence showed that the road over which the plaintiffs claimed a private easement was never part of the tract in which their lot was situated, but had been created by the dedication of a right of way by the lot owners of an adjoining tract, the doctrine of implied easement by sale with reference to a subdivision map did not apply. (263 Cal.App.2d at pp. 364-366.)

Second, it presupposes an intent on the part of the original grantor, by depicting the road on the map and by referring to the map in the deed, to create an easement, as opposed to depicting the road and referring to the map for purposes of description only or as an aid in identification, this intent being unambiguously shown by the creation and depiction on the map of new streets, as opposed to the depiction on the map of a street already depicted on earlier recorded documents. (See *Petitpierre* v. *Maguire, supra,* 155 Cal. at p. 248.) It is this element of intent which the Kings have failed to establish by any of their asserted undisputed facts.

Before we discuss the Kings' failure to establish the necessary intent, we must also point out that the Kings are wrong to the extent they contend that the easement in their favor was created by way of the implied grant of an easement. ▪▪▪ One cannot grant an easement to oneself; one can only *reserve* such an interest in the land granted to another. That is exactly what is going on in this case: the Kings are not interested in a declaration that their *grantee* has an easement; instead, they are trying to establish that they, as grantors, reserved by implication an easement in their favor as a burden over the property conveyed to the Desimones and thence to the Mikelses by conveying Parcel 1 to the Desimones through a deed description referring to Parcel Map 4013.

As noted at the beginning of this section, the Kings' contentions as to the legal theory of how the easement in question was created are rather confused. Although they never expressly rely on the theory that the easement in their favor was created by express or implied reservation (as opposed to grant), such a theory seems to be hovering about the edges of their arguments. However, of course, they never pleaded such a theory as the basis of their cross-complaint. ▪▪▪ Furthermore, the facts proposed as undisputed are not sufficient to support a judgment, as a matter of law, on the theory of an implied reservation, as is apparent from the relevant law:

▪▪▪ "[S]ince a grant is to be construed in favor of the grantee and against the grantor whenever possible, the courts hesitate to contradict an unqualified grant by implying an easement that burdens the grantee's

property and derogates from the grant. For this reason a court may refuse to find an implied easement in favor of the grantor even though the circumstances surrounding the conveyance would be sufficient to justify an implied grant had the grantor conveyed the dominant tenement.

"To imply a reservation of an easement to benefit the grantor, all of the general requirements of implication must be present. However, the courts require that the grantee have knowledge of the existing use or that it is so obvious and permanent that the grantee's knowledge of its use can be implied. If the grantee of the quasi-servient tenement does not have adequate notice of the preexisting use, he receives title to the servient tenement as a bona fide purchaser without the burden of the unknown easement." (Miller & Starr, *supra*, § 15:24 at p. 461, fns. omitted.)

The Kings did not submit as an undisputed fact that the Mikelses had the requisite knowledge or notice of the alleged preexisting use of the disputed roadway through actual observation of the roadway's use by the Kings and those persons permitted by the Kings to use the roadway. Furthermore, the Kings did not present as an undisputed fact that the Mikelses had the requisite knowledge or notice because of the reference to Parcel Map No. 4013 in their deed. Although the deeds to the Desimones and the Mikelses referred to the parcel map, which showed the offer of dedication and conditional acceptance of "Almond Street," the conditional acceptance did not create a public easement (as discussed above in section (1)(a)), nor did the Kings contend that the map made any representations as to a *private* roadway easement over any portion of Parcel 1, including "Almond Street."

The undisputed presence of an unambiguous representation on the map that there was a private easement in favor of the remainder parcel over "Almond Street," combined with a deed to the Desimones of Parcel No. 1 which referred to the map, could have supplied the necessary intent on the part of the Kings as grantors to reserve an easement in favor of the remainder parcel to support a conclusion as a matter of law that there had been an implied reservation of an easement. However, the Kings did not establish as a fact that there was such an unambiguous representation of a private easement. See, for example, *Metzger v. Bose* (1960) 183 Cal.App.2d 13 [6 Cal.Rptr. 337], overruled on another ground, *Valenta v. County of Los Angeles* (1964) 61 Cal.2d 669, 672 [39 Cal.Rptr. 909, 394 P.2d 725], in which the plaintiff conveyed land to the defendants, without expressly reserving an easement in an existing county road. After the county abandoned the road, the plaintiff claimed that because he had described the property granted to defendants by reference to a recorded land survey, which survey showed the county road, he had reserved an easement by implication. The court held that the survey was not a subdivision map, and did not

purport to make any representation as to private easements, there being "no reason to suppose, in the absence of anything else, that the reference to a public road carried any implications as to rights over the public road or in the land occupied thereby beyond the rights belonging to the public in general." (183 Cal.App.3d at p. 19.) Therefore, the court concluded, plaintiff was not entitled to an easement under the theory of implied reservation.

In sum, we conclude that in this case there are no undisputed facts sufficient to establish that the Kings had reserved an easement by implication, even assuming they had pleaded such a theory.

We conclude that the trial court erred by granting the Kings' motion for summary judgment based on its adjudication that as a matter of law a private easement exists in their favor on the Mikelses' property. We therefore reverse the judgment on this basis.

B. *The Motion for Judgment on the Pleadings* \*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### DISPOSITION

The final judgment and the order of dismissal of the Mikelses' cross-complaint as to the second cause of action against Rager and the third cause of action against the Kings, including Rager, are reversed.

Dabney, Acting P. J., and McDaniel, J.,† concurred.

A petition for a rehearing was denied August 13, 1991, and respondents' petition for review by the Supreme Court was denied October 17, 1991.

---

\*See footnote, *ante*, page 334.

†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

## APPENDIX A

MAP
of the tract of land of the
Cucamonga Homestead Association
situate
in the County of San Bernardino California
showing the
Subdivision into 20 acre tracts, and building lots.

Surveyed July and August 187- by G Hanson Scale of 1 inch to 10 chs.
True courses, Var N 4½ E The 20 acre lots are 10 chs in front and 20 chs long.
The building lots are 50 f in front and 100 f long
The Streets running North and South between the building lots are 60 f wide
Orange Street is 40 f. Almond Street is 33 f. and all the other Streets
are 66 feet wide

Drawn by A Solano.

Filed at request of Wells Fargo & co Feb 17 th 1883
H F Holcomb
County Recorder
By E A Weller
Deputy

Recorded April 25 th 1885
Legare Allen
County Recorder
By H P Cave
Dep

APPENDIX B

# PARCEL MAP NO. 4013

## IN THE CITY OF RANCHO CUCAMONGA

BEING A DIVISION OF GOVERNMENT LOT 2 AND A PORTION OF
GOVERNMENT LOT I OF FRACTIONAL SECTION 21, TOWNSHIP I
NORTH, RANGE 7 WEST, S.B.M. AND A PORTION OF ALMOND
STREET (VACATED)

SHEET 1 OF 2 SHEETS

ASSOCIATED ENGINEERS
ONTARIO, CALIFORNIA

**OWNER'S CERTIFICATE**

**NOTARY ACKNOWLEDGEMENTS**

State of California
County of San Bernardino } S S

State of California
County of San Bernardino } S S

State of California
County of San Bernardino } S S

**SIGNATURE OMISSION**

**SURVEYOR'S CERTIFICATE**

**COUNTY SURVEYOR'S CERTIFICATE**

**COUNTY SURVEYOR'S APPROVAL AND ACCEPTANCE CERTIFICATE**

APPENDIX B, P. 2